461 So.2d 1361 (1985)
Nelson L. DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2615.
District Court of Appeal of Florida, Second District.
January 18, 1985.
James Marion Moorman, Public Defender, Bartow and Deborah K. Brueckheimer, Asst. Public Defender, Clearwater, for appellant.
*1362 Jim Smith, Atty. Gen., Tallahassee, and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellee.
RYDER, Chief Judge.
Nelson L. Davis was charged with grand theft auto. The court denied his motion to suppress. A jury found Davis guilty as charged. On appeal, Davis argues that the trial court erred by denying his motion to suppress, his motion for mistrial, and when sentencing him.
On March 15, 1983, Det. Benjamin Holthusen of the St. Petersburg Police Department was on uniformed patrol in a downtown area of the city. The detective testified that he "checked" the area bars up to three times each evening, and he knew "just about everybody" in the bars by face or name. Holthusen was in one of these bars when he saw Davis, whom he did not recognize. As Davis was leaving the bar, Holthusen asked him for identification. Davis replied that he did not have any. Holthusen then walked back to his cruiser and began to drive off. He then saw Davis and two companions get into a car in front of the bar. Davis got behind the wheel and drove off. At this point, Holthusen became suspicious that Davis was driving without a license because Davis had just stated that he didn't have any identification. The detective stopped Davis' car and asked for his driver's license and vehicle registration. Davis was unable to produce either item or any identification. At that point, Holthusen took Davis back to the cruiser with the intention of arresting him for driving without a license. After running several checks on the car which Davis had been driving, Holthusen found that the vehicle had been stolen a few weeks earlier. Davis was arrested for grand theft auto.
During the hearing on the motion to suppress, Holthusen testified that the reason he initially approached Davis was because he did not know him. Holthusen admitted that, at that time, he did not suspect Davis of being involved in any criminal activity. Holthusen further testified that if Davis had not said he did not have identification, he would not have stopped Davis' car and subsequently found out it was stolen.
Appellant argues that the detective's initial questioning of him for identification was not based on any suspicion of criminal activity but was purely arbitrary. In support of this argument, he cites cases in which the Florida Supreme Court has held that a policeman may not stop and question a person on a bare suspicion of illegal activity. Mullins v. State, 366 So.2d 1162 (Fla. 1978), on remand, 371 So.2d 1113 (Fla. 3d DCA), cert. denied, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979) (defendant was riding a bicycle slowly through a residential area in the very early morning hours); Wilson v. State, 433 So.2d 1301 (Fla. 2d DCA 1983) (defendant was in a high crime area with a bag under his arm, changed the package from one arm to another after seeing the detectives, changed directions in his walk and went up on a front porch of a house where he did not live).
In Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), the Florida Supreme Court cited Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the proposition that nothing in the constitution prevents a police officer from addressing questions to anyone on the street. Under such circumstances, the person may refuse to cooperate and go on his way. The court then concluded that there was nothing in the record that indicated Lightbourne was not free to express an alternative to go on his way. The court explained that the police need questioning as a tool for effective enforcement of the criminal laws.
In Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court wrote "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street ... [and] asking him if he is willing to answer some questions... ." 103 S.Ct. at 1324.
In a more recent opinion, I.N.S. v. Delgado, ___ U.S. ___, 104 S.Ct. 1758, 80 *1363 L.Ed.2d 247 (1984), on remand, 736 F.2d 1340 (9th Cir.1984), the court ruled that a consensual encounter between a police officer and a citizen can be transformed into a Fourth Amendment seizure if, in view of all the surrounding circumstances, a reasonable person believes he is not free to leave. The court wrote that Royer implies that a request for identification by police does not constitute a Fourth Amendment seizure. 104 S.Ct. at 1762. The court further wrote that even though most citizens will respond to a police request without being told they are free not to respond, this does not eliminate the consensual nature of the response. A Fourth Amendment detention results only when the circumstances of the encounter are so intimidating that a reasonable person would have believed he is not free to leave. 104 S.Ct. at 1763.
In the case before us, we have a uniformed police officer who chose to ask appellant for identification only because he did not recognize him. Although the officer admittedly did not have any founded suspicion upon which to approach and question the appellant, both the United States Supreme Court and the Florida Supreme Court have ruled that the mere questioning of an individual does not amount to a Fourth Amendment detention. The appellant truthfully answered the officer's question, even though he was free to refuse to respond. However, he did respond and then walked away. The information gained was, therefore, not the product of an illegal detention, and could properly be used to provide probable cause for the second stop, which led to the appellant's arrest and conviction for auto theft.
Appellant's second point on appeal is that the court should have granted a mistrial because of an allegedly prejudicial remark which a witness made in response to the state's questioning. The state asked the witness, an investigating officer, whether he saw the appellant in possession of the car. The officer responded: "[w]hen I arrived at the scene, he was already in custody ... I knew the defendant." (emphasis supplied by appellant). Appellant's counsel objected to this comment. The trial judge found that because of the ambiguity of the statement and because it conformed to a previous witness' testimony, the jury would not get the impression that the appellant had a prior criminal history. We agree.
The appellant also argues that the judge erred by departing from the recommended sentencing guidelines range and not attaching a guideline scoresheet as required by Florida Rule of Criminal Procedure 3.701(d). We do not agree. The judge properly declared appellant to be an habitual offender under section 775.084, Florida Statutes (1983), and sentenced him to five years imprisonment. The judge then outlined the same criminal history upon which he had declared appellant to be an habitual offender as the reason for departing from the sentencing guidelines. This was a clear and convincing reason for departing from the guidelines. Brady v. State, 457 So.2d 544 (Fla. 2d DCA 1984). Unlike the circumstances in Doby v. State, 461 So.2d 1360 (Fla. 2d DCA 1984), and Myrick v. State, 461 So.2d 1359 (Fla. 2d DCA 1984), the judge had been informed by appellant's counsel that the presumptive sentence was three years and the guideline range encompassed two and one half to three and one half years. Therefore, the absence of a guideline scoresheet in this record is irrelevant.
Affirmed.
GRIMES and CAMPBELL, JJ., concur.