572 So.2d 1033 (1991)
STATE of Florida, Appellant,
v.
Richard James BARNETT, Appellee.
No. 89-00391.
District Court of Appeal of Florida, Second District.
January 18, 1991.
*1034 Robert A. Butterworth, Atty. Gen., Tallahassee, and Anne Y. Swing, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Kevin Briggs, Asst. Public Defender, Bartow, for appellee.
CAMPBELL, Acting Chief Judge.
The state argues in this appeal that the trial court erred when it suppressed the firearm and drug paraphernalia found in appellee, Richard James Barnett's, car. We reverse on the basis of State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985) and Davis v. State, 461 So.2d 1361 (Fla. 2d DCA), rev. denied, 471 So.2d 43 (Fla. 1985).
When Barnett was stopped, Polk County sheriff's deputies were looking for Ronnie Presley, the subject of several outstanding warrants. A detective had advised the deputies that Presley might be found in a certain silver Buick. The deputies knew that Presley and Barnett often rode together in that silver Buick, with Barnett driving and Presley riding along as a passenger.
When the deputies spotted the car, they pulled the car over, assuming Barnett would be driving and that Presley would be a passenger. The car had tinted windows so that the deputies could not see who was in the car until they pulled it over. When Barnett got out, Deputy Taylor looked inside and determined that Presley was not a passenger. Deputy Taylor asked Barnett where Presley was and Barnett said he did not know.
Deputy Taylor then asked Barnett for his driver's license and vehicle identification. When Barnett failed to produce a valid driver's license, the deputies ran a license and warrants check on him and discovered outstanding warrants against Barnett.
In the course of Barnett's subsequent arrest, the deputies found ammunition on Barnett's person and a firearm and drug paraphernalia in the car.
The trial court suppressed the firearm and drug paraphernalia, finding that law enforcement was not entitled to detain Barnett while awaiting the results of a computer check. The court found that once the officers determined that Presley was not in the car, Barnett should have been allowed to leave without further questioning.
This case turns on whether the officers, having already determined that Presley was not in the car, were justified in asking Barnett for identification. We find that they were. Citing the United States Supreme Court and the Florida Supreme Court, this court found in Davis v. State, 461 So.2d 1361 (Fla. 2d DCA), rev. denied, 471 So.2d 43 (Fla. 1985), that the mere questioning of an individual, including a police request for identification, does not amount to a fourth amendment detention. 461 So.2d at 1363. See also State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985). "[E]ven though most citizens will respond to a police request without being told they are free not to respond, this does not eliminate the consensual nature of the response." 461 So.2d at 1361.
We must conclude that the deputies' request for Barnett's driver's license was not a continuation of the stop, but constituted a consensual encounter. The evidence gained as the result of this encounter was, therefore, not the product of an illegal detention and should not have been suppressed.
Reversed and remanded for proceedings consistent with this opinion.
HALL, J., concurs.
PARKER, J., concurs specially.
PARKER, Judge, concurring.
I agree with the result reached in this case. However, I disagree that the facts constitute a consensual encounter. Officer Taylor, the deputy sheriff who approached Barnett, testified as follows:
Q. As soon as the driver got out you knew it wasn't Ronnie Presley; didn't you?
A. That's correct.

*1035 Q. Because you do know Mr. Barnett; don't you?
A. That's correct.
Q. And you also know Mr. Presley?
A. Yes.
Q. There was no question in your mind as soon as you saw who got out who it was?
A. That's correct.
Q. And when you walked up to the car and looked in you saw nobody else in that vehicle; did you?
A. That's correct.
Q. And at that time you did not know that there was any warrant or that Mr. Barnett was wanted in any way; did you?
A. No, I did not.
Q. Yet, you did not allow him to walk on and proceed about his business; did you?
A. That's correct.
Q. You also did not pull him for any traffic violations; did you?
A. That's correct.
That testimony does not support the basis for a consensual encounter. Both the Davis and Arnold cases, relied upon by the majority opinion, found that the police contact was a consensual encounter, relying upon Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). As stated in Davis, referring to Lightbourne:
[T]he Florida Supreme Court cited Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the proposition that nothing in the constitution prevents a police officer from addressing questions to anyone on the street. Under such circumstances, the person may refuse to cooperate and go on his way. The court then concluded that there was nothing in the record that indicated Lightbourne was not free to express an alternative to go on his way. The court explained that the police need questioning as a tool for effective enforcement of the criminal laws.
... .
In a more recent opinion, I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), on remand, 736 F.2d 1340 (9th Cir.1984), the court ruled that a consensual encounter between a police officer and a citizen can be transformed into a Fourth Amendment [sic] seizure if, in view of all the surrounding circumstances, a reasonable person believes he is not free to leave.
461 So.2d at 1362-63. Based upon the reasoning in these cases, I disagree that the facts involved in this case support a consensual encounter, either in the minds of Deputy Taylor or Barnett. As a driver of a vehicle, Barnett could not think that he had the right to refuse to produce a driver's license and registration and drive away from the deputies.
The facts in this case support that the deputies' actions constituted a seizure. Fourth amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628, 635 (1989) (emphasis in original). The question, to me, therefore, becomes whether this seizure of Barnett was reasonable. I conclude that it was.
The Supreme Court has disapproved random stops made by law enforcement officers in an effort to apprehend unlicensed drivers and unsafe vehicles. The court observed that this practice would permit a "kind of standardless and unconstrained discretion [which] is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent." Delaware v. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660, 672 (1979). "Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment [sic] would be seriously circumscribed." 99 S.Ct. at 1401. I have not overlooked Cameron v. State, 112 So.2d 864 (Fla. 1st DCA 1959), which held that section 322.15, Florida Statutes, permitted a law enforcement officer, with no suspicions, to stop any vehicle driver to examine *1036 the driver's license and registration. Section 322.15 provides:
License to be carried and exhibited on demand. 
(1) Every licensee shall have his operator's or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same upon the demand of a patrol officer, peace officer, or field deputy or inspector of the department.
§ 322.15, Fla. Stat. (1987). Although Cameron has never been expressly overruled by a Florida appellate court, I think Prouse overrules Cameron sub silentio.
Prouse did point out that it was permissible for authorities to maintain roadside truck weigh-stations and inspection checkpoints to require vehicles to stop and be detained for inspection. 99 S.Ct. at 1401 n. 26. Prouse would also permit road-blocks of all traffic for momentary driver's license checks. 99 S.Ct. at 1401. Further, the Supreme Court has utilized a balancing test analysis in approving highway checkpoints for detecting illegal aliens in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), and for detecting drunk drivers in Michigan Department of State Police v. Sitz, ___ U.S. ___, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).
Therefore, I would affirm based upon the following rationale. First, the stop of the vehicle was based upon a reasonable suspicion that a passenger in the vehicle was wanted on outstanding felony warrants. Both the state and the defense concede that the original stop of the vehicle was valid, and the trial court so found. Second, the deputies, upon determining that the wanted person was not in the vehicle, had a right to detain Barnett, the driver, momentarily to determine if he was licensed to drive, because Barnett's vehicle was lawfully at a stop in the presence of the deputies, and it was reasonable to determine if Barnett was licensed to permit him to continue to drive. Third, upon a failure to produce a driver's license, the deputies are permitted in Barnett's presence to conduct a check of Barnett's driver's license status through the computer network. Fourth, upon notification that there were outstanding warrants for Barnett, he was lawfully arrested, and the subsequent search of his vehicle was lawful. The police may search in the passenger compartment of an automobile, including sealed containers, where there is a valid arrest of a recent occupant of that automobile. See State v. Ciucio, 548 So.2d 1184 (Fla. 2d DCA 1989).