964 So.2d 758 (2007)
Vinton Alrick GRAHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4893.
District Court of Appeal of Florida, Fourth District.
August 29, 2007.
*759 Carey Haughwout, Public Defender, and Elisabeth Porter, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant challenges his convictions for burglary, grand theft, and resisting an officer without violence, claiming that the trial court erred in denying his motion to suppress. The trial court found that the officer had reasonable suspicion to stop appellant on suspicion of trespass. We agree and affirm.
Claridges Condominium is a private condominium complex. Residents can gain access to Claridges by using a security key. To get into Claridges as a visitor, one has to be "buzzed in" by the security person at the front door and then check in with security.
One evening, a resident saw a strange black male in the hallway of the sixth floor of the condominium complex. The man ran when seen by the resident. The resident immediately called to report the incident to the security person at the front door.
As it happened, two Palm Beach policemen in plain clothes were on the premises. The security person asked if they had been on the sixth floor, but they had not. The *760 security person relayed the information from the resident about the man on the sixth floor. The security officer had not seen this other man enter the premises. One of the police officers, Officer Lee, went back to his vehicle to grab a set of handcuffs. Approximately two minutes later, another resident ran up to the officers and pointed out a black man walking away from a fire escape stairwell of the condominium. Lee did not see the black man emerge from the condominium. He only observed him walking away.
The officers approached the man, who was appellant Graham. Lee asked to speak with Graham, and Graham asked what this was all about. The officers explained to him that they received a complaint from the security woman that there was a suspicious black male on the sixth floor. Graham responded, "I was up on the sixth floor." The officers asked Graham his reason for being on the sixth floor, and Graham explained that he had come to visit a friend named Stanley. When the officers asked Graham what unit number Stanley lived in and what was Stanley's last name, Graham responded that he did not know.
The officers then asked Graham for his identification. Graham reached into his pockets, removed a wallet, and started fumbling through it, but then closed it and put it back into his pocket without producing any identification. Graham was nervous and his hands were shaking. Lee then asked Graham how he gained entry into the building. Graham stated that he walked in through the front doors, went to the elevator, and went up to the sixth floor. The officers asked Graham if he checked in with the doorperson, and Graham replied that he did not. Lee did not believe that Graham would have been able to enter the complex through the front doors without checking in, because within the same time frame he and Officer Krauel had been required to check in. Additionally, when Lee had entered the building in the past, there was always someone sitting at the entrance with whom he had to check in.
The officers explained to Graham that his story did not seem as if it was truthful. Lee again asked Graham to produce his identification so they could clarify his reason for being there and so that they could verify whether someone named Stanley lived on the sixth floor. At this point, Graham started getting agitated and he wanted to know why he was being harassed. Graham then started to walk away, but Krauel grabbed Graham by the arm and told him he was not free to go until they clarified what was going on. Graham snatched his arm away and started to run. The officers apprehended him, handcuffed him, and told him he was under arrest. When Graham was patted down, the officers discovered personal property belonging to a resident of the complex.
The officers stated that they arrested Graham for resisting without violence because he fled without giving proper identification. When the trial court denied the motion to suppress, it found that the officers had reasonable suspicion that Graham had trespassed in the condominium. On appeal, Graham contends that the trial court erred in denying his motion to suppress.
While Graham argues that he was illegally stopped, the state contends that the officers engaged in a consensual encounter during which they developed reasonable suspicion of criminal activity, namely trespass. Thus, their continued detention and subsequent search of Graham was lawful. We conclude that the initial encounter was consensual and that through that encounter, coupled with the other information the officers received, they developed reasonable *761 suspicion of criminal activity sufficient to support the detention of Graham.
"A reviewing court must accept the trial court's findings of fact in an order on a motion to suppress, so long as those findings are supported by the record. However, a suppression order that turns on an issue of law is reviewed by a de novo standard of review." Underwood v. State, 801 So.2d 200, 202 (Fla. 4th DCA 2001). "Whether a particular set of facts can justify a finding that a police officer had a reasonable suspicion to conduct an investigative detention is a question of law." Faunce v. State, 884 So.2d 504, 506 (Fla. 1st DCA 2004). The standard to apply to an officer's actions in making a stop is whether the officers had a minimal objective basis of suspecting legal wrongdoing. See Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
A consensual encounter is one that involves minimal police contact. Popple v. State, 626 So.2d 185, 186 (Fla.1993). A consensual encounter does not involve constitutional safeguards because the citizen is free to leave. State v. Robinson, 740 So.2d 9, 12 (Fla. 1st DCA 1999). "During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them." Popple, 626 So.2d at 186. The mere questioning of an individual, including a police request for identification, does not amount to a Fourth Amendment detention. State v. Barnett, 572 So.2d 1033, 1034 (Fla. 2d DCA 1991). "An officer may address questions to anyone on the street, and unless the officer attempts to prevent the citizen from exercising his right to walk away, such questioning will usually constitute a consensual encounter rather than a stop." State v. Mitchell, 638 So.2d 1015, 1016 (Fla. 2d DCA 1994).
We agree with the state that the officer's initial approach to Graham constituted a consensual encounter. The officers requested that Graham answer a few questions, which he did. When Graham refused to provide his identification and walked away, the officers prevented him from doing so. At that point the encounter elevated to a stop. The issue presented is whether the officers had reasonable suspicion to support the stop.
The trial court justified the stop by concluding that the officers reasonably suspected Graham to have committed a trespass. The crime of trespass of a structure is defined in section 810.08 as follows:
(1) Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.
The officers knew that Graham had been inside the condominium, and they reasonably believed that he lied about going in the front door and by the security person, as they themselves had to be admitted into the condominium by the security person. The security person had not authorized his entry into the building. Therefore, the officers could reasonably suspect that Graham had entered in some unauthorized and surreptitious way. Cf. § 810.07(1), Fla. Stat. (in trial for burglary stealthy and unauthorized entry creates presumption of an intent to commit an offense therein). In addition, the fact that Graham did not appear to have a connection with this elderly community of residents, Graham's lies about his method of entry, his fleeing from a resident who saw him on the sixth floor, his nervousness, and his subsequent *762 attempt to flee from the officers all support the conclusion that Graham's presence in the condominium was unauthorized. Because the officers reasonably suspected Graham was criminally trespassing, they had grounds to insist on his identification to further their investigation and to apply for an arrest warrant. As such, the officers had a reasonable suspicion to support a stop of Graham. We thus affirm the trial court's denial of the motion to suppress.
Graham also challenges his prison releasee reoffender sentence, because the state relied on an affidavit of his prison record and releases, which he claims is hearsay. We have already addressed such affidavits in Yisrael v. State, 938 So.2d 546 (Fla. 4th DCA 2006) (en banc), rev. granted, 956 So.2d 458 (Fla.2007), and we have concluded that these affidavits do not constitute inadmissible hearsay. We decline to revisit it here. This issue is presently under consideration by our supreme court on conflict jurisdiction.
Affirmed.
KLEIN and HAZOURI, JJ., concur.