559 So.2d 335 (1990)
STATE of Florida, Appellant,
v.
Martin J. STARKEY, Appellee.
No. 89-2664.
District Court of Appeal of Florida, First District.
April 3, 1990.
*336 Robert A. Butterworth, Atty. Gen., and Virlindia A. Sample, Asst. Atty. Gen., Tallahassee, for appellant.
Louis O. Frost, Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellee.
ALLEN, Judge.
In this murder prosecution the state appeals a pre-trial order suppressing evidence consisting of pistol cartridges seized without a warrant from the interior of appellee's automobile. Since the officer who seized the cartridges had pre-intrusive probable cause to believe that the vehicle contained evidence of a crime, we hold, even in the absence of any showing of exigent circumstances, that the officer had authority to enter the vehicle, which was parked in a public parking lot, and conduct a warrantless seizure of the cartridges. Consequently, we reverse.
On January 11, 1989, employees of the Jacksonville, Florida Sheriff's Office contacted Michael Bridges, a special agent with Naval Investigative Services at the Cecil Field Naval Air Station in Jacksonville. Bridges's assistance was requested in connection with an investigation of a homicide which had taken place at a Jacksonville restaurant earlier on that date. *337 Bridges was advised that a shooting had occurred and that a pistol had been used. He was also told that the investigation had focused on appellee, who worked at Cecil Field, and that various witnesses had been able to identify appellee's automobile. After appellee was arrested and charged with murder later that day, Bridges was dispatched without a search warrant to appellee's automobile, which was some distance from where appellee was arrested. The automobile was legally parked in a public parking lot on the base. Before entering the automobile, Bridges looked through the window in the driver's side door and saw pistol cartridges inside a depression in the console between the front seats. Bridges then entered the automobile, drove it to an impound lot, and collected the cartridges as evidence.
The trial court's order suppressing the evidence was founded on two rationales. First, the trial judge assumed that he was required to find that Bridges's subjective reason and justification for entering the automobile and seizing the cartridges was a legally sufficient basis for the entry and seizure. Since Bridges was unable to articulate a subjective reason for the seizure which the trial court believed to be legally sufficient, the trial court ruled that the entry and seizure lacked legal justification and was a pretext. The trial court's assumption on this point was incorrect. The law is now well settled that the lawfulness of a warrantless search is to be determined by an objective view of the facts, not the subjective view of the person conducting the search. See Padron v. State, 449 So.2d 811, 812 (Fla. 1984), and Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The trial court's second rationale, that there was an absence of any showing of exigent circumstances sufficient to excuse the warrant requirement, was also not a sufficient basis for suppression of the evidence. While we agree that there was no showing of exigent circumstances, we find that no such showing was required under the facts of this case for reasons to be discussed more fully herein.
We begin our analysis with the observation that Bridges's act of looking into the interior of the automobile did not constitute a search. If an automobile is located in an area where the police have a right to be, the police may lawfully look through the automobile's windows and view objects which can be seen within. Such observation is not a "search" under the Fourth Amendment and involves no legally recognized intrusion. See Adoue v. State, 408 So.2d 567 (Fla. 1981); State v. Flores, 305 So.2d 292 (Fla.2d DCA 1974), cert. denied, 315 So.2d 189 (Fla. 1975); and W. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 2.5(b) (West 2d ed. 1987). Therefore, the issue in this case relates to the entry of the vehicle and the seizure of the cartridges, not to Bridges's initial observations.
Next we turn to the question of whether Bridges had probable cause to believe that appellee's automobile contained evidence of a crime. Immediately prior to entry of the vehicle Bridges knew that a homicide had been committed earlier on that day, that the homicide was carried out with a pistol, that appellee had been arrested and charged with murder, that witnesses had been able to identify appellee's automobile, and that appellee's automobile contained pistol cartridges. Armed with this knowledge, Bridges unquestionably had probable cause to believe that the cartridges were evidence of a crime.
We must recognize, however, that mere probable cause is insufficient to justify warrantless seizure of evidence located in a constitutionally protected area, even though a police officer may have lawfully viewed the evidence from a point outside the protected area. As the United States Supreme Court said in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), in discussing the "plain view" exception to the warrant requirement,
The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of *338 the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.
Coolidge, 403 U.S. at 468, 91 S.Ct. at 2039. The principle is expressed by another Fourth Amendment scholar as follows:
Seeing something in open view does not, of course, dispose, ipso facto, of the problem of crossing constitutionally protected thresholds. Those who thoughtlessly over-apply the plain view doctrine to every situation where there is a visual open view have not yet learned the simple lesson long since mastered by old hands at the burlesque houses, "you can't touch everything you can see."
Light waves cross thresholds with a constitutional impunity not permitted arms and legs. Wherever the eye may go, the body of the policeman may not necessarily follow.
Moylan, The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle, 26 Mercer L.Rev. 1047, at 1096 (1975).
Until fairly recently, it was generally understood that the interior of a private automobile was a constitutionally protected area into which police officers could not travel unless they were armed with a warrant, could establish consent of the owner, or could show some exception to the warrant, requirement. Exceptions included search incident to arrest, the automobile exception, and the plain view exception. Searches incident to arrest were carefully limited, however, to the area around the arrestee, and the automobile and plain view exceptions required a showing of exigent circumstances in order to be applicable. The Coolidge opinion provides a good discussion of the limitations of these various exceptions.
In 1985, the long-understood principle that the interior of a private automobile is a constitutionally protected area was largely eliminated. In California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Supreme Court held that where police officers who have probable cause to believe that an automobile (or a motor home, as was the case in Carney) located on nonresidential property contains evidence of a crime, the officers may lawfully enter the automobile and seize evidence without a warrant and without any showing of exigent circumstances. After a brief preliminary discussion of the two rationales for the holding, the mobility of the vehicle[1] and a reduced expectation of privacy with respect to one's automobile,[2] the Supreme Court proceeded to combine the two rationales and hold as follows:
In short, the pervasive schemes of regulation which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.
When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes  temporary or otherwise  the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.
*339 Carney, 471 U.S. at 392-393, 105 S.Ct. at 2069-2070. Thus, it appears that the automobile "exception" to the warrant requirement has now become the automobile "rule", with a warrant "exception." We understand from the holding in Carney that the police are now free to search any vehicle, any time, and any place (except when it is upon residential property) simply because the police have probable cause to believe that the vehicle contains contraband or other evidence of a crime. It is our understanding that the Carney holding has eliminated any Fourth Amendment requirement for a warrant or showing of exigent circumstances. Our understanding is the same as that of many other courts. For examples, see People v. Romero, 767 P.2d 1225 (Colo. 1989); State v. Tompkins, 144 Wis.2d 116, 423 N.W.2d 823 (1988); State v. Isleib, 319 N.C. 634, 356 S.E.2d 573 (1987); and United States v. Bagley, 772 F.2d 482 (9th Cir.1985), cert. denied, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).
Some state courts have recognized the holding in Carney, but have proceeded, as a matter of state constitutional law, to require more of the police than is required by the holding in Carney. State v. Kock, 302 Or. 29, 725 P.2d 1285 (1986), is a good example of such a case. However, we are not at liberty to find such a requirement under the law of Florida. Through their 1982 amendment of Article I, Section 12 of our state constitution, the citizens of Florida have delegated their authority for defining the contours of their right to freedom from unreasonable searches and seizures to the United States Supreme Court. Consequently, the citizens of this state are extended no greater right to freedom from governmental intrusion into the contents of their personal automobiles than is given in Carney.
The state's reliance on Carney herein is well placed. Appellee's automobile was located on a public parking lot and Bridges had ample probable cause to believe that the automobile contained evidence of a crime. Therefore, the entry of the automobile and seizure of the cartridges were not violative of the Fourth Amendment. We reverse and remand for further proceedings in accordance with this opinion.
ERVIN and ZEHMER, JJ., concur.
NOTES
[1] See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
[2] See Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).