686 So.2d 682 (1996)
STATE of Florida, Appellant,
v.
Ronald Maurice BALDWIN, Appellee.
No. 96-110.
District Court of Appeal of Florida, First District.
December 20, 1996.
Rehearing Denied February 7, 1997.
*683 Robert A. Butterworth, Attorney General; Trisha E. Meggs, Assistant Attorney General, Tallahassee, for Appellant.
Nancy Daniels, Public Defender, Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellee.
MICKLE, Judge.
In this appeal, the state contends that the trial court erred in granting Ronald M. Baldwin's motion to suppress based on a misapplication of the law to the facts. We reverse the suppression order and remand for the trial court to clarify its findings and conclusions.
Baldwin was charged with one count each of possession of cocaine, possession of fewer than 20 grams of cannabis, and possession with intent to use drug paraphernalia. The defense filed a motion to suppress "a small brown wrapper containing three pieces of suspected crack-cocaine, one small ball of copper wire and one partially burned suspected marijuana cigarette along with any residue found therein." Baldwin claimed that the officers' discovery of the contraband arose from an illegal stop, detention, and search. The order granting the motion to suppress states in pertinent part:
A hearing on a Motion to Suppress was conducted on December 14, 1995. Three Pensacola police officers testified during the course of the hearing. The facts established at the hearing are specifically set forth hereafter. The Grand Hotel and apartments adjoining the hotel are located on North Guillemard in the city of Pensacola. The area of the Grand Hotel is known as a high crime area to include drug activity, robberies, auto burglaries and auto thefts. The owner of the Grand Hotel property and apartments has specifically requested the Pensacola Police Department to check the area for loiterers in an effort to suppress criminal activity in and around his property.
On March 19, 1995, two Pensacola police officers were walking through the area of the Grand Hotel at approximately 9:30 P.M. to facilitate the request of the owner of the property. Both officers were in uniform and armed. The officers noted the Defendant sitting on a cement stoop in front of the apartments. Another man was standing next to the Defendant. Neither of these gentlemen was involved in any suspicious activity. The officers merely approached them for the purpose of determining their reason for being in that location. The Defendant and the other gentleman responded to a request for identification. Pensacola Police Officer Bobe asked if either of them had anything on their person that they should not have. Both gentlemen responded negatively. Officer Bobe asked if he could search the gentlemen. The man standing next to the Defendant agreed to be searched.
While [the officer was] conducting the search of the other gentleman, the Defendant placed his hands in his pockets. The Defendant was asked to remove his hands from his pockets for reasons of officer safety. The officers were curious about the Defendant because of his refusal to be searched. Their focus, however, was directed toward the other individual until the Defendant, once again, placed his hand[s] in his pockets. The officer again asked the Defendant to remove his hands from his pockets. The Defendant complied. The officers did nothing more directed toward the Defendant and returned their focus to the other gentleman.
On a third occasion the Defendant returned his hands to his pockets. The officers asked the Defendant to remove his hands from his pockets. On this occasion, the Defendant pulled his hands out of his pockets and, while [verbally] denying the possession of any contraband, threw the contents of his pockets on the ground. The officers observed a brown piece of paper dropping to the ground with the Defendant's money and change. The paper was inspected and found to contain *684 rocks which subsequently tested positive for the presence of cocaine.

The time during which this encounter between the officers, the Defendant, and the third [sic] person was a minimal amount of time to facilitate identification and conduct a search agreed upon by the third person [the other gentleman]. At no time was the Defendant detained. He was free to leave at any time. The officers[`] focus was substantially directed toward the other gentleman. Due to the two prior instances of the officers' failing to react to the Defendant's removal of his hands from his pockets, the Court concludes that the Defendant voluntarily removed the contents of his pockets without direction, suggestion, or coercion from the officers.

The Defendant was arrested for the possession of cocaine. After his arrest he requested that his automobile (legally parked in front of the apartments) be secured. Within fifteen minutes a canine officer and his dog came to the area and alerted to two locations on the Defendant's vehicle. Following the alert by the drug dog, the officers searched the Defendant's vehicle and retrieved a marijuana roach, a wire commonly used as a filter for smoking cocaine, and a small quantity of cocaine.
(Emphasis added). As to the trial court's findings of fact, the standard of review is whether competent substantial evidence supports those findings. Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Factual findings are clothed with a presumption of correctness, so that all facts and reasonable inferences therefrom will be construed in a light most favorable to sustaining the ruling. Brandin v. State, 669 So.2d 280, 282 (Fla. 1st DCA 1996). Having reviewed the suppression-hearing testimony of the two foot patrolmen (Officers Bobe and Stone), as well as that of the officer who later arrived at the scene with the drug dog (Officer Wilkinson), we conclude that sufficient evidence supports the factual findings made by the lower court. Accordingly, we may not disturb those findings.
A ruling on a motion to suppress is a mixed question of fact and law, each subject to a different standard of review. United States v. Harris, 928 F.2d 1113, 1115-16 (11th Cir.1991). In the final portion of its order, the trial court addressed questions of law as applied to the facts, the application of which is subject to de novo appellate review. Id. The order states:
The line of cases cited by the parties appear to indicate that a citizen's response to an officer's direction constitutes a submission to authority. The request for the Defendant to remove his hands from his pockets was solely for officer protection without the officer having any articulable suspicion that the Defendant possessed any weapons or contraband or was acting in any threatening manner toward the officers.
The Court reluctantly concludes that the authority cited by counsel is controlling. The parties are encouraged to appeal this decision because the facts in this case may justify a modification of the basic holdings of the appellate authority controlling the decision in this case. It is, therefore,
ORDERED AND ADJUDGED that the Motion to Suppress Evidence in this cause is granted with regard to all evidence seized from the ground in front of the Defendant and from his motor vehicle.
(Emphasis in original).
On appeal, the parties disagree over whether the trial court correctly applied the law to the instant facts. The state argues that the lower tribunal misconstrued the law governing the facts, and that the findings in the suppression order are internally inconsistent. Baldwin contends that the Florida cases discussed at the suppression hearing are dispositive and require suppression. Because we agree with the state's position that the conclusions of law are inconsistent with the findings of fact, the order must be reversed.
The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." Florida courts are constitutionally required to interpret search and seizure issues in conformity with the federal Fourth Amendment, as construed by the United States Supreme Court. *685 Art. I, § 12, Fla. Const.; State v. Butler, 655 So.2d 1123, 1125 (Fla.1995). The High Court has characterized the Fourth Amendment limits of search-and-seizure power as intended "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals," United States v. Martinez-Fuerte, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116, 1126 (1976), but "not to eliminate all contact between the police and the citizenry...." United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). In Mendenhall, the Court held that "a person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509 (emphasis added); Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, 239 (1983); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (seizure occurs where one's freedom of movement has been restrained, either by physical force or show of authority, so that surrounding circumstances demonstrate reasonable person would not have felt free to leave). Thus, the test to determine whether a person has been "seized" by force or a show of authority is an objective test, "not whether the citizen perceived that he was being ordered to restrict his movement." California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690, 698 (1991). The "reasonable person" test presupposes an innocent person. Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389, 400 (1991); Jones v. State, 658 So.2d 178, 180 (Fla. 1st DCA 1995). The Court in Mendenhall stated that factors that might indicate a seizure, even where the individual did not attempt to leave, include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language of tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.
It seems clear that the two officers' initial contact with both Baldwin, who was seated on a cement stoop in front of the apartments, and his companion, who was standing nearby, was nothing more than a routine and proper consensual encounter, not a seizure. Bostick, 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."); State v. Barnett, 572 So.2d 1033 (Fla. 2d DCA) (after determining that the person they sought was not in the car they had stopped, officers still were justified in asking the driver for identification, and their requests for a driver's license and vehicular papers merely continued the consensual encounter, not invoking the Fourth Amendment), rev. den., 581 So.2d 163 (Fla. 1991). Having received a request from the property owner to patrol the area known for drug activity, burglaries, and vehicular crimes, the two uniformed, armed officers approached the two men merely to determine their purpose for being there. The officers politely asked for the two men's names and addresses and asked whether either one had anything on him that could get him into trouble. When asked for permission to search his pockets, Baldwin refused, whereas the other gentleman agreed to be searched. Officer Bobe testified that Baldwin was free to leave then with impunity, and the record is devoid of any suggestion of the officers' use of threatening, coercive, or intimidating language or demeanor. See United States v. Angell, 11 F.3d 806, 809-10 (8th Cir.1993) (in case involving manufacture of marijuana, events constituted a consensual encounter where stationary officer who observed vehicle at stop sign initially asked occupants who they were, where they were going, and whether they had been drinking, and, after they answered, said "Stay there, I want to talk to you" or "Hold it right there," so that a pickax, plant-starter tray, fertilizer, and mud observed in the back seat as officer approached vehicle were not suppressible evidence), cert. den., ___ U.S. ___, 114 S.Ct. 2747, 129 L.Ed.2d 865 (1994).
Baldwin contends that constitutional concerns were triggered once the officers, for personal safety reasons, politely asked him if he would mind removing his hands from his *686 pockets. The officers testified that, during that period, their focus was substantially directed toward the other gentleman, who was submitting to a consensual personal search by Officer Bobe. The officers evinced no intent to search Baldwin, absent other circumstances, once he declined their initial request to search him. Officer Stone testified that "it's very common for people in that area to carry the flip-open razor-blade types they use to cut crack cocaine." These items are flat and, unlike some other potential weapons, cannot readily be seen underneath clothing. Officer Bobe testified that in the same neighborhood, in a scenario nearly identical to the instant encounter, he had asked the routine questions "How are you doing?" and "You got anything on you that's going to get you in trouble?" whereupon the individual reached in and pulled out a knife. For safety reasons, Bobe asked Baldwin "if he would mind taking his hands out of his pockets while we were there." Officer Stone, who likewise testified that he was concerned about safety, repeatedly asked Baldwin to remove his hands after Baldwin initially complied but then returned his hands to his pockets. Stone became wary after Baldwin "became rather nervous" when asked to remove his hands. The officer did not ask Baldwin to remove and show his hands and whatever item(s) of property might have been inside his pockets. Cf. Mayhue v. State, 659 So.2d 417 (Fla. 2d DCA 1995) (initial consensual encounter during which officer spotted defendant pushing a shopping cart and questioned him, whereupon defendant became verbally abusive and refused to answer, became investigatory stop after officer saw defendant's right hand and clenched fist held close to defendant's body and, fearing the presence of a concealed weapon, officer ordered defendant "to open his hand").
To determine whether these circumstances constituted a seizure of Baldwin for constitutional purposes, the trial court was required to apply the objective test enunciated in Mendenhall, Royer, and Hodari D.. Therefore, pursuant to this analysis the question is not whether Baldwin personally felt he was being detained by a show of authority and was not free to leave, but whether a reasonable person would have thought he was free to leave. Jones, 658 So.2d at 180. In its order, the trial court concluded: "At no time was the Defendant detained. He was free to leave at any time." (Emphasis added). The court also found that Baldwin voluntarily removed the contents from his pockets without the officers' coercion, direction, or suggestion. Despite those findings, the trial court also determined, albeit reluctantly, that a number of Florida decisions argued at the suppression hearing compel the conclusion that Baldwin was seized for constitutional purposes and that the contraband discovered as a result thereof must be suppressed. We disagree. If by finding that at no time was Baldwin detained and that he was free to leave anytime the trial court intended to apply the "reasonable person" test, then as a matter of law those other cases dealing with submissions to authority and seizures are not controlling. We must remand the order for the trial court to clarify whether it applied the proper constitutional test and to apply the law to the facts.
If the trial court determines on remand that a reasonable person would have thought he was free to leave, then no seizure occurred when the officer asked Baldwin to remove his hands from his pockets, and no Fourth-Amendment violation was committed. Bostick, 501 U.S. at 434, 111 S.Ct. at 2386, 115 L.Ed.2d at 398 (encounter will not trigger Fourth-Amendment scrutiny unless it loses its consensual nature). As the state correctly notes, such a finding would materially affect the admissibility of the contraband. That is, if Baldwin remained on the cement stoop of his own volition and was not seized, and then freely removed the money and the brown wrapper from his pocket and dropped it on the ground, then he would have no Fourth-Amendment basis to challenge the officers' retrieval of rock cocaine found inside this freely, voluntarily abandoned property. Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Abel v. United States, 362 U.S. 217, 240-41, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 686 (1960); State v. Louis, 571 So.2d 1358, 1359 (Fla. 4th DCA 1990) (during lawful traffic stop, where defendant, complying with officer's order to take his hands out of his bulky jacket, removed manila envelope from jacket and *687 threw it to ground, defendant could not challenge search and seizure of such freely and voluntarily abandoned property). Clarification of the trial court's findings relating to whether Baldwin was seized is especially important for purposes of admissibility of the evidence, in light of the lower court's finding that Baldwin "voluntarily removed the contents of his pockets without direction, suggestion, or coercion from the officers."
Contemplating that the trial court might find no seizure on remand, the state argues that after being asked to take out his hands, Baldwin twice placed them back inside his pockets, acts of non-compliance that suggest to the state that Baldwin (and, by implication, a reasonable person) knew that he did not have to obey the requests or, for that matter, knew that he was free to remain on or to leave the premises. We decline to address this argument, for resolution of this matter is appropriate for the trial court on remand.
Baldwin contends that as a matter of law he was "seized" when the officers, who were mainly focusing on the consensual search of the other gentleman, courteously asked Baldwin if he would mind removing his hands from his pockets while they were there. The parties vigorously discussed below, and have cited on appeal, several Florida decisions for purposes of comparison and contrast. Cf., e.g., State v. Johnson, 21 Fla. L. Weekly D1909 (Fla. 5th DCA Aug. 23, 1996) (distinguishing "a command" from "a request" for a defendant to remove hands from pockets for reasonable purpose of officer's safety, and reversing suppression order where nothing in record indicated, and trial court did not find, that defendant believed he was required to consent to removal of hands from pockets); and State v. Woodard, 681 So.2d 733, 735 (Fla. 2d DCA 1996) (reversing suppression order and remanding for further proceedings because investigating officer's request for defendant to remove his hands from his pockets, "when made to ensure an officer's safety, does not elevate a consensual encounter to a detention"); and Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993) (initial consensual encounter between police officer and defendant evolved into seizure, and cocaine as well as other evidence should have been suppressed, where officer identified himself and told defendant to take his hand out of his pocket and defendant, "in full submission to the show of authority made," followed the order by removing his hand as a substance containing cocaine fell from his person); and Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992) (under circumstances where police officer approached defendant on street and ordered him to take his hands out of his pockets and to turn around so officer could get a better look at him, reasonable person would not have felt free to disregard this directive; defendant was seized without requisite founded suspicion of criminal activity, and contraband should have been suppressed), rev. den., 623 So.2d 495 (Fla.1993); and Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990) (reasonable person would have felt compelled to comply, and thus seizure occurred, where suspect was asked to exit parked vehicle and, after getting out, was asked several times to remove her hands from her pockets). To justify such a seizure, a law enforcement officer must have a founded suspicion of criminal activity, i.e., a "factual basis in the circumstances observed by the officer." Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989); § 901.151, Fla. Stat.; Terry. Because the trial court must address on remand the aforementioned inconsistencies in the order, the question of whether the repeated requests for Baldwin to remove his hands from his pockets elevated the encounter to a seizure for Fourth-Amendment purposes is not yet ripe for appellate consideration. However, in the interest of judicial economy, we note that, in making its determination as to whether a seizure occurred, a trial court must consider the particular context of the events and the totality of the surrounding circumstances, one factor of which is the officers' requests. Therefore, the trial court's application of an objective analysis, and its conclusions regarding the nature of the encounter between the two officers and Baldwin up to the request to remove his hands, will affect the resolution of the "hands in pockets" issue.
After his arrest, Baldwin asked the officers to make sure that his legally parked car was locked, to prevent a break-in. Officer Dickinson gave unrefuted testimony that to lock the vehicle, one must open the door and punch the handle. After the drug canine *688 (which was summoned after the drug arrest) alerted on the exterior of the driver's door and rear passenger's door, and the vehicle's door was opened in compliance with Baldwin's express request to lock it, Officer Wilkinson discovered the partially burned marijuana "roach" and a ball of copper mesh wire commonly used as a filter in crack cocaine pipes. If the trial court finds that Baldwin was not illegally detained, i.e., was not "seized," and then voluntarily abandoned the property that led to his arrest, the next question will be whether the officer lawfully walked the drug dog around the exterior of the vehicle in a public place. State v. Starkey, 559 So.2d 335, 337 (Fla. 1st DCA 1990). Unless the discovery of contraband in Baldwin's automobile is the fruit of unlawful governmental action, as the doctrine was enunciated in Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441, 453 (1963), and Rouse v. State, 643 So.2d 696 (Fla. 1st DCA 1994) (products of illegal search must be suppressed), then Baldwin would have no Fourth-Amendment basis to challenge the vehicular search. Blackmon v. State, 570 So.2d 1074, 1076 (Fla. 1st DCA 1990).
REVERSING the order suppressing evidence and REMANDING for clarification consistent with the rules of law set forth in this opinion.
WEBSTER and LAWRENCE, JJ., concur.