784 So.2d 529 (2001)
STATE of Florida, Appellant,
v.
Kip Allen SHAW, Appellee.
No. 1D00-2031.
District Court of Appeal of Florida, First District.
April 26, 2001.
Robert A. Butterworth, Attorney General; Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellant.
Nancy A. Daniels, Public Defender; Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellee.
*530 PER CURIAM.
The State appeals an order granting Kip Allen Shaw's motion to suppress firearms discovered during a search of the trunk of a vehicle driven by him[1]. Concluding that the trial court may have based its ruling on a misunderstanding of the law governing the deputy's search of the trunk, we reverse the suppression order and remand for findings of fact.
The motion to suppress alleged that firearms and cannabis were illegally seized without a warrant, in violation of the Fourth Amendment of the United States Constitution and Article I, Sections 12 & 23, of the Florida Constitution. Shaw sought to suppress the firearms, the cannabis, and any statements made by him that are the product of the illegally seized property.
A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, so that we must interpret the evidence and reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling. See McNamara v. State, 357 So.2d 410, 412 (Fla.1978); Bonifay v. State, 626 So.2d 1310 (Fla.1993). A motion to suppress presents a mixed question of fact and law. See State v. Baldwin, 686 So.2d 682, 684 (Fla. 1st DCA 1996). Deference is given to findings of fact unless they are clearly erroneous, whereas the application of the law to the facts is subject to de novo review. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995). The Fourth Amendment protects only searches that intrude upon an expectation of privacy that society is prepared to recognize as reasonable. See Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). In evaluating search and seizure issues, Florida courts are bound by the Fourth-Amendment precedents of the United States Supreme Court. See Art. I, § 12, Fla. Const.; Holland v. State, 696 So.2d 757, 759 (Fla.1997).
Deputy Brian Rix, the only witness at the suppression hearing, testified that the following events occurred. While on duty shortly after 8:00 P.M. on January 21, 2000, he had observed a Ford Tempo going only 40 m.p.h. in a 55-m.p.h. zone on U.S. Highway 441/41 and repeatedly veering off the road. He stopped the car to see whether the driver (Shaw) was impaired. After pulling onto the side of the road, Shaw got out of the car but was instructed to get back in. He told the deputy that the only reason he was driving was that his wife, who was seated with two children in the back seat, was sick. The deputy suspected then that Shaw was driving without a license. A check of the license tag showed that it was assigned to a Dodge van. When he was asked to show a driver's license, other identification, or a vehicle registration form, Shaw told the deputy that he had none. Checking under Shaw's name and date of birth, the deputy discovered that Shaw's driver's license had been suspended for failure to pay traffic tickets. The vehicle was registered in a name different from Shaw or his wife.
When he was asked whether his normal course of action would have been to arrest Shaw for not having a license and for having a tag not assigned to that vehicle, the deputy said it is "a possibility that somebody could be arrested for that, but it is not a necessity." If he had arrested *531 Shaw for those offenses, the usual procedure would have been to tow the vehicle to the compound and to have it searched for contraband and for other inventory.
Deputy Rix testified further that Shaw asked not to be arrested, for he would return to prison. That remark made the deputy nervous, and he told Shaw to relax. However, because Shaw was acting very jittery and was moving around constantly, the deputy became concerned that he might be armed. To assure that Shaw had no weapons, the deputy performed a patdown, which revealed nothing. At that point, the deputy had intended merely to issue a citation to him for the license violation.
Still needing to determine why Shaw had driven erratically, Deputy Rix asked whether the vehicle contained weapons, drugs, or alcohol, and Shaw said "No." When he was asked for permission to search the vehicle, Shaw said that the deputy could do so. As Shaw stood behind the vehicle and his wife and their two small children remained in the back seat, the deputy searched the driver's compartment area and found the butt of a cannabis "joint" next to the gear shift. When informed of this discovery, Shaw admitted that it was his, and that he had smoked it just prior to operating the vehicle. Shaw reiterated his request not to be arrested. When the deputy said that he was just trying to ascertain why the car was not properly registered, Shaw said that it was his vehicle but that it had a title problem.
Deputy Rix testified that at that point, Shaw spontaneously said: "Well, you are going to find them anyhow. There are two guns in the trunk of the vehicle." The deputy asked whether Shaw had the key, and Shaw opened the car trunk. He could not recall whether he had asked Shaw for permission to search the trunk, for he assumed that permission was given once Shaw admitted the guns' location. The deputy then retrieved one .22-caliber gun and one .25-caliber gun from the trunk. Shaw told the deputy that he did not know whether either gun was operational. Shaw claimed that he was just transporting his brother's firearms from one location to another. Prior to the search, a computer check had disclosed that Shaw had two prior felony convictions. Shaw was informed that he had too many violations and was under arrest. The deputy testified that prior to the discovery of the guns, he had not planned to arrest Shaw for the license violation, for the deputy was only a minute from home and was supposed to go off-duty at 8:00 P.M. The vehicle had been released to Shaw's wife.
During closing arguments, the State phrased the specific issue as whether Deputy Rix had the right to search the car trunk. The State contended that given his knowledge that Shaw was a convicted felon, the deputy had a duty to investigate the trunk once Shaw told him about the guns in the trunk. The State noted that the evidence of possession of firearms by a convicted felon would have been lost once the car was driven off by Shaw or his wife. Alternatively, the State argued that the search of the trunk was consensual. Under either theory, the State's case depended on whether the trial court believed Deputy Rix's testimony regarding what had happened, and in what sequence the events had occurred.
On the other hand, defense counsel argued that once Deputy Rix concluded that Shaw was not impaired and did not pose a safety threat, the investigation was over, so that any subsequent "consent" to search the vehicle was neither knowing nor voluntary but, instead, was the product of mere acquiescence to authority or of the deputy's erroneous belief that Shaw's disclosure constituted valid consent. Assuming for *532 the sake of argument that the interior search of the vehicle was proper and the cannabis was lawfully found, defense counsel argued alternatively that the firearms still must be suppressed as the product of an illegal search of the trunk. The State responded that if Deputy Rix had not removed the firearms from the trunk, the car would have been impounded, with the result that the authorities inevitably would have discovered the guns anyway.
After arguments of counsel, the trial judge questioned the deputy regarding Shaw's comment about prison. The deputy indicated that Shaw had advised him of having been arrested before, and a field check revealed that he had two prior felony convictions. When the deputy searched the trunk, he already knew about the prior felonies. This colloquy ensued:
THE COURT: Was it your intention to get those firearms out and charge him with carrying a firearm by a convicted felon?
THE WITNESS: I don't know what my intention was. My main one was to run a check of the guns, and only one had a serial number. I wanted to make sure they were not stolen and to basically secure the firearms for safety purposes. I knew that he wasn't supposed to have firearms, so tentatively, yes.
THE COURT: I appreciate your candor. And I think you are being very honest in that the reason was to see if the firearms were stolen and to check them out. And for that reason, I don't think you had a valid permission to search that trunk. The motion to suppress on the firearms is granted, and the motion for the marijuana is denied. The marijuana is to be admitted.
At the end of the suppression hearing, defense counsel announced Shaw's guilty plea to misdemeanor possession of less than 20 grams of cannabis and misdemeanor driving with a suspended license. The State's appeal of the granting of the motion to suppress the firearms followed.
The State construes the evidence as showing that Shaw voluntarily consented to the search of the trunk, where the deputy found the guns. It is true that consent to a search would be a valid basis for reversing the trial court's order of suppression if the court actually had found that Shaw freely and voluntarily gave consent to the trunk search. See State v. Chang, 668 So.2d 207 (Fla. 1st DCA 1996). Our review of the suppression hearing transcript discloses no such finding. In fact, the judge specifically stated that the deputy never had Shaw's permission to search the trunk. Although a different assessment of the evidence could support the State's position, we would be overstepping the bounds of proper appellate review were we to assume the role of fact-finder. See Dormezil v. State, 754 So.2d 168, 169 (Fla. 5th DCA 2000) ("[T]he determination of whether the consent to a search was voluntary is a question for the trial judge and should not be disturbed on appeal unless the determination is clearly erroneous.").
Alternatively, if the trial court had found that prior to the search, the deputy knew that Shaw was a convicted felon and Shaw had told the deputy that the trunk contained firearms, it would be proper to reverse the suppression order on the theory that the deputy searched the trunk while possessed of probable cause to believe that the trunk contained evidence of a crime. See California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); State v. Starkey, 559 So.2d 335, 338 (Fla. 1st DCA 1990). However, the trial court made neither finding. Near the conclusion of the suppression hearing, the judge questioned Deputy Rix about whether or not it was his intention to check to see if the firearms *533 were stolen. The court's questions raise the possibility that the suppression of the firearms was based on the court's misperception of law that the deputy's subjective intent underlying the search of the trunk plays a role in determining whether the search was lawful. Because under Article I, section 12, of the Florida Constitution "the citizens of Florida have delegated their authority for defining the contours of their right to freedom from unreasonable searches and seizures to the United States Supreme Court," Starkey, 559 So.2d at 339, we are bound by the High Court's holding in Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), whereunder "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."
It is the trial court's prerogative to assess witness credibility and to determine what happened in this case. If, on remand, the court elects not to believe Deputy Rix's testimony that before searching the trunk, he already knew that Shaw was a convicted felon and that the guns were in the trunk, then the firearms must be suppressed. If, on the other hand, the trial court accepts the deputy's chronology of the events preceding the trunk search, then the deputy had probable cause under Carney and Starkey to believe that the trunk contained evidence of a crime, so that the trunk search is valid.
The order suppressing the firearms is REVERSED, and the case is REMANDED, for factual findings.
BARFIELD, C.J., ALLEN and BROWNING, JJ., concur.
NOTES
[1] Acting Circuit Judge David Bembry presided over the hearing on the motion to suppress. Circuit Judge Paul Bryan issued the written order granting the motion as to the firearms.