PER CURIAM.
 

 Scottie Jackson, Appellant, appeals his convictions and sentences for armed burglary and possession of drug paraphernalia, arguing that the trial court erroneously denied his motion to suppress evidence obtained after an arrest. Appellant sought suppression of a crack pipe, statements he made to the police after his arrest, a shotgun, and some shotgun shells. We agree with Appellant that his arrest was unlawful and that the officers obtained the crack pipe and his statements as a result of the arrest. However, undisputed evidence in the record shows that the discovery of the shotgun and shells did not result from Appellant’s arrest, either directly or indirectly. Undisputed evidence also shows that the crack pipe would have been inevitably discovered by the officers through lawful means unrelated to the illegal arrest. Accordingly, we affirm in part and reverse in part, holding that the statements should have been suppressed, and the remaining evidence was properly admitted. As to the remaining issue raised on appeal, we affirm without discussion.
 

 Motions to suppress present mixed questions of fact and law.
 
 State v. Shaw,
 
 784 So.2d 529, 530 (Fla. 1st DCA 2001). A trial court’s ruling on a motion to suppress is “clothed with a presumption of correctness.”
 
 Id.
 
 Accordingly, we review the trial court’s findings of fact for competent, substantial evidence, interpreting any reasonable inferences from the evidence in
 
 *276
 
 a manner most consistent with upholding the trial court’s ruling.
 
 Id.
 
 The portions of the ruling that constitute legal conclusions are reviewed de novo.
 
 Id.
 

 Officers Jeremy French and Michael Raley, who were both involved in Appellant’s arrest, testified at the suppression hearing. According to their testimony, the burglary victim told them he suspected that Appellant was the perpetrator and pointed out Appellant’s mother’s home to them. As part of their investigation, the officers followed a trail of footprints leading from the burglary victim’s home to Appellant’s mother’s home. The officers testified that when they arrived at Appellant’s mother’s home in their patrol vehicle, they observed Appellant standing very still in an open shed. Based on Appellant’s actions, they believed he was attempting to escape their notice. The officers approached Appellant and recorded their interactions with him on a video camera in their vehicle.
 

 The videotape was admitted into evidence at the suppression hearing, but only the transcript is included in the record. The tape began with the officers approaching Appellant and asking how he was doing, whether he lived at that property, and what his name was. Appellant responded that he was doing fine, he lived there, and his name was “Scottie.” At that point, the officers told Appellant that there had been a burglary, and they were “trying to see if anybody ... knew anything.” At the same time, the officers pointed out to Appellant that they were “kind of curious” because he was “acting real still.” Appellant replied that he knew nothing about the burglary, and the officers then asked for identification. Appellant stated that he had no identification, and the officers asked for his name again, telling Appellant they were “just trying to get some [information].” Appellant’s response was “Scottie Anderson.” After asking for the spelling of Appellant’s first name, the officers asked for his last name again, at which point, Appellant stated that his last name was Brown. In response, one of the officers said, “Do me a favor, man, right now put your hands behind your back for me. You ain’t under arrest, you just ain’t being straight up with us, okay.” The officer asked Appellant if he had any weapons, again informed Appellant he was not under arrest, and again asked for Appellant’s name. Appellant then invited the officers to speak with his mother. At that point, it seems that the officers inspected Appellant in some way, as they questioned him regarding a lighter and a pocket knife. Shortly thereafter, Appellant told the officers that his real name was Scottie Jackson. After Appellant’s mother confirmed that his name was Scottie Jackson, one of the officers stated that Appellant told him a different name previously, and then, the following conversation ensued:
 

 FRENCH: “... Do you have anything here that’s going to stick me?
 

 JACKSON: “No.
 

 RALEY: “You ain’t got warrants on you, do you man? Huh?
 

 JACKSON: “That’s where my money stashed.
 

 RALEY: “That’s your pipe right there. Is that all you got?
 

 FRENCH: “You got any dope on you?
 

 JACKSON: “Ain’t got no more dope on me, sir.
 

 FRENCH: “Why you got a crack pipe then? I’m going to go out there and look in that shed and see if I can find some dope here in a minute. Right now (inaudible).
 

 JACKSON: (Inaudible)
 

 FRENCH: “I’m just arresting you for drug possession. Lying to the police.
 

 
 *277
 
 Shortly after this exchange, the officers read Appellant the
 
 Miranda
 

 [1]
 

 warnings, and he made incriminating statements regarding the burglary. The officers recovered a crack pipe from Appellant’s person. From a search of the shed, the officers also recovered the shotgun that was taken in the burglary and some shotgun shells. Officer French testified that before he searched the shed, Appellant’s mother had identified herself as the property owner and given consent to the search.
 

 Appellant sought suppression of the statements, the crack pipe, the shotgun, and the shells, based on his contention that the officers unlawfully arrested him for giving a false name at a time when he was neither lawfully detained nor under arrest. The State’s argument in response was that the officers had reasonable suspicion to detain Appellant and that “once he start[ed] giving them the false names he was detained and then he could be placed under arrest at that point for giving a false name upon being detained.” The trial court denied Appellant’s motion, providing the following verbal findings:
 

 [The officers] had already investigated a burglary and taken testimony from the victim and the victim indicated that any suspect might be the guy down the street and then they saw footprints leading ... down the street off and on, but the last one was in the yard before the defendant was found and then the defendant attempted to hide himself, although they said it wasn’t a very good attempt, but he did attempt to hide himself and then gave the two different names I think according to the video before they basically detained him which I think it was reasonable at that point to say, “What is your name,” or whatever.... [A]t that point all that is reasonable.
 

 There is no written order denying the motion to suppress. From these verbal findings, however, it appears that the trial court considered the initial encounter between Appellant and the officers to be consensual and determined that it became a lawful detention after Appellant gave two different names. The trial court apparently concluded that Appellant’s arrest was lawful because he was already lawfully detained when the officers discovered his real name. The State defends the trial court’s ruling essentially by repeating the proposition that because Appellant was detained when his mother informed the officers of his real name, the arrest for giving a false name was proper. The trial court’s conclusion and the State’s argument reflect a misunderstanding of the law.
 

 The giving of a false name is not a crime unless it occurs during a lawful detention or arrest.
 
 Dubois v. State,
 
 932 So.2d 298, 299 (Fla. 2d DCA 2006);
 
 see
 
 § 901.36(1), Florida Statutes (2007). The determination of whether Appellant could have been lawfully arrested for giving false names depends on whether he was either legally detained or arrested at the time when he gave the false names. There are essentially three types of police-citizen encounters: consensual encounters, investigatory stops, and formal arrests.
 
 Popple v. State,
 
 626 So.2d 185, 185 (Fla.1993). Either an “investigatory stop” or a formal arrest can constitute a “lawful detention” within the meaning of section 901.36(1). Because the trial court found that Appellant gave the false names before he was detained, it was improper to conclude that the arrest for the offense of giving a false name was lawful. The fact that Appellant was lawfully detained by the time the officers discovered his true name does not change the fact that the offense occurred during a consensual encounter. On ap
 
 *278
 
 peal, the State does not contend that Appellant was arrested for any other lawful reason, and we cannot glean any factual findings from the record that would support such a conclusion. Therefore, we conclude that Appellant’s arrest was unlawful.
 

 In the motion filed below, Appellant requested that the trial court suppress all evidence recovered after the illegal arrest. Of course, the mere fact that evidence is discovered after illegal conduct by a police officer is an insufficient basis for suppression. Instead, it must be contended that the evidence is “in some sense the product of illegal government activity.”
 
 Nix v. Williams,
 
 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (quoting
 
 United States v. Crews,
 
 445 U.S. 463, 471, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)). Even when a Fourth Amendment violation has occurred, evidence should be suppressed only if it “has been come at by exploitation of the illegality” and was not obtained “by means sufficiently distinguishable to be purged of the primary taint.”
 
 Wong Sun v. United States,
 
 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
 

 Based on these principles, it is not clear to us that the items found in the shed were “fruit of the poisonous tree” at all. Appellant’s arguments assume that the search of the shed was incident to the arrest. It is not clear from this record that the officers considered the search of the shed to be incident to the arrest, or even that a search of the shed could have been properly considered as such, as there was no finding that the area of the shed that was searched was within Appellant’s immediate reach, and the undisputed facts do not sufficiently support such a proposition.
 
 See Bryant v. State,
 
 765 So.2d 903, 905 (Fla. 5th DCA 2000) (recognizing that a search incident to a lawful arrest includes a search of the area within the arrestee’s immediate control). Regardless, for the purposes of this opinion, we will assume, without deciding, that the officers searched the shed as a result of the arrest. In contrast, it is clear that the crack pipe and Appellant’s statements were obtained as a result of Appellant’s arrest. We now consider whether any of this evidence could have been properly admitted under an exception to the exclusionary rule, concluding that only the statements should have been excluded from Appellant’s trial.
 

 The exception that applies to the items found in the shed is the independent source doctrine. Under the independent source doctrine, evidence is admissible if the State can show that it was obtained by “means wholly independent of any constitutional violation.”
 
 Nix,
 
 467 U.S. at 443, 104 S.Ct. 2501. It applies when evidence is discovered as a result of unlawful police activity but is also discovered independently through a lawful investigation that occurs either before or after the illegal activity, so long as the independent investigation is “untainted by the initial illegality.”
 
 See Murray v. United States,
 
 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).
 
 [2]
 
 Here, the State presented undisputed testimony that Appellant’s mother, who was the owner of the proper
 
 *279
 
 ty, gave consent to Officer French to search the shed. Officer French’s undisputed testimony was that Appellant’s mother invited him into her home when she went inside to answer the telephone, and at that point, she authorized him to search the shed. There is no indication that Appellant’s mother would have refused to consent to the search if Appellant had not been arrested, that the officers somehow used the arrest to obtain her consent, or that she otherwise felt unduly pressured by Appellant’s interactions with the police. Because Officer French independently obtained consent to search the shed, he discovered the shotgun and shells through lawful means untainted by the arrest. Thus, even if he simultaneously believed the arrest gave him justification for searching the shed, the consent from Appellant’s mother removed the taint of the arrest, making the shotgun and shells admissible at trial.
 

 A closely related concept, the inevitable discovery doctrine, applies to the admission of the crack pipe. Under the inevitable discovery doctrine, evidence otherwise subject to suppression can be admitted if the State shows that the officers “ultimately would have discovered the evidence independently of the improper police conduct by ‘means of normal investigative measures that inevitably would have been set in motion as a matter of routine police procedure.’ ”
 
 McDonnell v. State,
 
 981 So.2d 585, 591 (Fla. 1st DCA 2008) (quoting
 
 Hatcher v. State,
 
 834 So.2d 314, 317-18 (Fla. 5th DCA 2003)). Here, after finding the shotgun, the officers would have arrested Appellant for the burglary, and a search incident to that arrest would have revealed the crack pipe. Therefore, the crack pipe was properly admitted at trial.
 

 It would be too speculative to conclude that Appellant would have provided the same incriminating statements to the officers if he had been arrested after the search of the shed, and we have found no other cases allowing the admission of a defendant’s statements under similar circumstances. We hold that because the statements were obtained as a result of the illegal arrest, and no exception to the exclusionary rule applies to allow their admission, the statements should not have been admitted at trial. Accordingly, we reverse Appellant’s convictions and sentences for possession of drug paraphernalia and armed burglary and remand for a new trial to be prosecuted without the benefit of the illegally obtained statements. In all other respects, the trial court’s rulings are affirmed.
 

 AFFIRMED in part; REVERSED in part; and REMANDED with directions.
 

 LEWIS and THOMAS, JJ., and LAWRENCE, JR., L. ARTHUR, Senior Judge, concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . As the
 
 Murray
 
 Court explained, the term "independent source” has been used in two distinct contexts. 487 U.S. at 538, 108 S.Ct. 2529. In some opinions, courts have used the term to refer to "cleanly obtained” evidence, i.e., evidence that is not properly considered fruit of the poisonous tree and to which the exclusionary rule does not apply.
 
 Id.
 
 As used in this opinion, "independent source doctrine” refers to an exception to the exclusionary rule.
 
 Id.
 
 In the second context, evidence obtained by an independent source is that evidence "acquired by an untainted search
 
 which is identical to the evidence unlawfully acquired." Id.