574 So.2d 1214 (1991)
STATE of Florida, Appellant,
v.
Karen STARKE, Appellee.
No. 90-00438.
District Court of Appeal of Florida, Second District.
February 22, 1991.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Anne Y. Swing, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Brad Permar, Asst. Public Defender, Bartow, for appellee.
THREADGILL, Judge.
The appellee was charged with possession of cocaine. The state appeals from the trial court's order granting the appellee's motion to suppress the cocaine. We reverse.
Testimony at the suppression hearing revealed that at about 8:00 p.m. on the evening in question, Officer Scott Pierce of the St. Petersburg Police Department was on patrol in a predominantly black neighborhood known for illegal narcotic activity. *1215 He observed the appellee, a white female, walking near an apartment the officer characterized as a known crack house. He saw her enter the grounds of the building, but did not see her go inside. He learned that she had come to the area in a taxi. The officer waited for her to return to the taxi which was parked on the street.
Upon her return, five minutes later, the officer asked her name and what she was doing in the area. She replied that she was visiting a friend, but was unable to give her friend's name or apartment number. She was sweating, constantly moving about, and she avoided looking at the officer. She appeared very nervous and hugged her purse to her body as if she were trying to hide it. She did not have anything else in her hands. Officer Pierce asked if he could look in the purse, and the appellee refused. The officer did not pursue the issue. The officer testified that he was not going to do anything further with the appellee at that point, but that he was gathering information for a probable field interrogation report.
The officer's request to look into her purse apparently caused the appellee to panic. She rapidly placed both hands and her purse behind her back and began backing away. Officer Pierce testified that he was concerned the appellee may have had a handgun in her purse, and he ordered her to stop and show him her hands. The appellee refused several such commands. The officer testified that he then feared for his life, so he drew his revolver and again ordered the appellee to put her hands where he could see them.
The appellee then threw a tissue to the ground behind her, and brought her hands to the front, dropping her purse at her feet. Officer Pierce reholstered his revolver, read the appellee her Miranda rights, and called a backup officer. When the backup arrived, Officer Pierce retrieved the tissue which was wrapped around a small rock of cocaine. The appellee was arrested for possession of cocaine. She told the officers she had come to the area to buy the cocaine that was wrapped in the tissue. The trial court granted the appellee's motion to suppress without any oral or written findings or conclusions.
The state argues that the episode started as a consensual citizen encounter that elevated to a lawful detention under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), due to the appellee's actions and her answers to questions given during the initial encounter. We agree.
In deciding whether the initial contact between the officer and the appellee was consensual, we must determine from the facts whether a reasonable person would have believed he was free to leave. State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). An officer may address questions to anyone on the street, and unless the officer attempts to prevent the citizen from exercising his right to walk away, such questioning will usually constitute consensual encounters rather than stops. Simons; State v. Wilson, 566 So.2d 585 (Fla. 2d DCA 1990).
Here, the officer initially asked the appellee who she was and why she was in the area. His suspicions were naturally aroused when she could not tell the officer the name of the friend she had just visited or the apartment number, by the fact that she nervously clutched her purse to her chest during the conversation, and by the fact that she was sweating and constantly moving about. The officer did not display his gun or touch the appellee. There is no competent, substantial evidence on the record that the officer used language that might indicate the appellee could not walk away or that the officer's actions or demeanor were intimidating. We, therefore, hold, that the initial contact with the appellee was a consensual encounter. See Simons, 549 So.2d at 787; Wilson, 566 So.2d at 586.
When the appellee suddenly put her hands and purse behind her and backed away, refusing to show the officer her hands, the consensual encounter ended. The officer, fearing for his life, drew his revolver. We find that the appellee's nervous demeanor and actions gave the officer reasonable suspicion to believe she had a weapon. See Wilson, 566 So.2d at 586. *1216 The officer's command for the appellee to stop and show her hands was, therefore, proper. Furthermore, the officer would, at that point, have been justified in conducting a pat-down search for weapons under Terry.
It was during this lawful detention that the appellee abandoned the cocaine. The appellee argues that the abandonment was involuntary and the result of an illegal stop and therefore the order of suppression should be affirmed. In Anderson v. State, 576 So.2d 319 (Fla. 2d DCA 1991), we recently held that an abandonment may be involuntary if made subsequent to an illegal stop. However, since we conclude that this was not an illegal stop but a consensual encounter followed by a lawful detention, we find the abandonment of the cocaine by the appellee was voluntary and not the result of unlawful police action. Officer Pierce merely directed the appellee to show her hands so he could see if she had a weapon. The appellee's decision to discard the cocaine was her own. Once she discarded it in a public area in the officer's view, she no longer had a reasonable expectation of privacy in the tissue, and it was properly seized. See Patmore v. State, 383 So.2d 309 (Fla. 2d DCA 1980).
Accordingly, we reverse the trial court's order granting the appellee's motion to suppress and remand for further proceedings.
RYDER, A.C.J., and PARKER, J., concur.