676 So.2d 987 (1996)
STATE of Florida, Appellant,
v.
Eric L. CRUMPTON, Appellee.
No. 95-02734.
District Court of Appeal of Florida, Second District.
March 22, 1996.
Rehearing Denied May 2, 1996.
*988 Robert A. Butterworth, Attorney General, Tallahassee, and Erica W. Raffel, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Clearwater, for Appellee.
LAZZARA, Judge.
The state appeals from an order granting the appellee's motion to suppress evidence in which the trial court determined that the appellee was the subject of an unlawful police detention as opposed to a consensual police encounter. Because there exists no substantial, competent evidence to support this determination, we reverse and remand for further proceedings.
In a written order rendered after the suppression hearing in this case, the trial court discounted the appellee's testimony, specifically finding it "added nothing and probably clouded the issue because much of what was said was probably not believable." Instead, it relied primarily on the testimony of the arresting officer. Accordingly, we review the officer's testimony to determine whether it supports the trial court's ultimate assessment that an illegal detention occurred. In doing so, we "adhere to the well-settled proposition that a trial court's ruling on a motion to suppress comes to this court clothed with a presumption of correctness and must be accepted by this court if the record reveals evidence to support the findings." State v. Spurling, 385 So.2d 672, 674 (Fla. 2d DCA), review denied, 392 So.2d 1379 (Fla.1980).
The arresting officer testified that during the early morning hours of November 2, 1994, he and another uniformed officer were parked in a marked police unit alongside a street awaiting a determination of whether a person they had in custody was the subject of an outstanding warrant. At this time, he observed the appellee, whom he knew from prior encounters, across the street in the company of eight to ten individuals. Some of these individuals were congregating in people's yards, others were at a bus stop, and still others, including the appellee, were standing in the street. The officer turned on his spotlight, shone it on the group, and announced over his unit's public address system that "it was time to leave" the area.[1] His perceived authority for ordering the group to disperse was twofold. One, this area had experienced nighttime criminal activities, including narcotics sales. Two, citizens living in the area had requested the police to enforce the no trespassing signs they had posted on their property. The officer testified, however, that the appellee was not standing on property posted with a no trespassing sign.
Before complying with the officer's order, the appellee bent toward the ground and then, as he stood back up, turned away from the officer and appeared to place something in his right front pants pocket. Concerned that the appellee may have placed a weapon in his pocket, the officer alerted his partner to keep an eye on the appellee for "officer safety."
The appellee, along with another individual from the group, then began walking across the street in the general direction of the police unit. The officer, who was still sitting *989 in his unit, greeted the appellee by asking "how things were going" and if he "minded" coming over to the unit and telling the officer what he had placed in his pocket. The appellee replied it was a piece of rock cocaine. Flabbergasted, the officer asked him to repeat what he said approximately three times, and, on each occasion, the appellee repeated the same answer. The officer, along with his partner, immediately exited the police unit and, with the consent of the appellee, retrieved a paper napkin with one piece of rock cocaine from the appellee's right front pants pocket. The officer then arrested appellee for possession of cocaine.
The officer further testified that prior to this verbal contact, the appellee had not engaged in any conduct indicating that he possessed a weapon or caused a safety concern. Furthermore, according to the officer, he had no indication that appellee had committed, was committing, or was about to commit, a crime. Finally, the officer related that although he never advised the appellee that he was free to leave, he in fact had that option. At no time, however, did appellee attempt to leave or refuse to speak with the officer.
Against this factual backdrop, the trial court determined that the officer exercised his authority in two respectsby ordering the group to disperse and by asking the appellee to approach the police unit. It further determined that a reasonable person under these circumstances would have felt "compelled to step over to the cruiser." The trial court concluded, therefore, that the officer's "request was made without benefit of lawful authorization and the citizen encounter ceased and became, in effect, a de facto arrest at the time the officer directed the Defendant over to the car even though the officer's testimony was `he would have been free to go.'" As we will explain, a strict application of the law regarding consensual encounters to the objective facts of the officer's testimony does not support the trial court's conclusion.
In Popple v. State, 626 So.2d 185 (Fla. 1993), the supreme court recognized the absence of a litmus test for distinguishing a consensual police encounter from a seizure. It observed, however, that "a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity." Id. at 187-188. The court then reaffirmed its prior holdings that "a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart." Id. at 188.
Our decisions predating Popple echo these fundamental principles. See, e.g., State v. Jenkins, 616 So.2d 173 (Fla. 2d DCA), review denied, 623 So.2d 494 (Fla. 1993); State v. Boone, 613 So.2d 560 (Fla. 2d DCA 1993); State v. DeCosey, 596 So.2d 149 (Fla. 2d DCA 1992); State v. Starke, 574 So.2d 1214 (Fla. 2d DCA 1991); State v. Wilson, 566 So.2d 585 (Fla. 2d DCA 1990); State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989) (cited with approval in Popple, 626 So.2d at 188). Furthermore, as we observed in Simons, an appellate court's assessment of whether a police encounter occurred must be made "in light of all surrounding circumstances to determine whether a reasonable person would have believed he or she were free to leave." 549 So.2d at 787. Consistent with this standard of review, we conclude that appellee's interaction with the officer was a consensual encounter based on the following analysis.
First, there is nothing in the officer's testimony demonstrating that he used words of compulsion requiring the appellee to approach the marked unit and tell the officer what he had placed in his pocket. See Wilson, 566 So.2d 585. Instead, in our view, the officer's language consisted of nothing more than asking questions of a citizen on the street in a noncompulsory manner which, even in the absence of a founded suspicion, is perfectly permissible. Popple, 626 So.2d 185; see also Boone, 613 So.2d 560 (officer asking defendant what he had in his hand behind his back did not transform encounter into seizure). Furthermore, the officer's failure to advise appellee that he was free to leave did not eliminate the consensual nature of the *990 appellee's later responses. See Simons, 549 So.2d 785.
Second, there is no indication from the officer's testimony that by his actions he interfered with the appellee's freedom to walk away or to refuse to answer any questions or in any way compelled or intimidated appellee to submit to a show of official authority. See id. Indeed, as previously noted from the officer's testimony, the appellee was always free to leave but chose instead to stay and answer the officer's inquiries. Moreover, the fact that the officer and his partner were in uniform, presumably armed, and sitting in a marked police unit was not sufficient in and of itself to constitute a show of authority. See Jenkins, 616 So.2d 173.
Based on this analysis, we determine, as in Starke, that "[t]here is no competent, substantial evidence on the record that the officer used language that might indicate the appellee could not walk away or that the officer's actions or demeanor were intimidating." 574 So.2d at 1215. Accordingly, because the officer's words and actions would not have conveyed to a reasonable person that he or she was not free to leave, the initial contact between the officer and the appellee was a consensual encounter. See Jenkins, 616 So.2d 173. It follows, therefore, that the trial court erred in granting the motion to suppress because (1) the information the appellee gave the officer regarding the presence of cocaine on appellee's person was not the product of an unlawful detention and (2) this information gave the officer ample probable cause to conduct a lawful search of the appellee's person for the presence of cocaine. See DeCosey, 596 So.2d 149 (Fla. 2d DCA 1992).
In reaching our conclusion we have not overlooked the trial court's preliminary finding, supported by the record, that the officer's order of dispersal constituted an exercise of authority. We conclude, however, that this order to disperse, under the facts of this case, was not the functional equivalent of a seizure of the appellee's person. The officer's testimony is clear that all he was telling the members of appellee's group was that "it was time to leave." He at no time, by this order, restricted their freedom to leave the area, leaving their direction of travel to their discretion. The fact that the appellee, after retrieving the cocaine from the ground, chose to walk in the direction of the officer's marked unit and to respond to the officer's inquiries was his own decision.[2]
Accordingly, because there is no basis for sustaining the trial court's order of suppression even after affording it the presumption of correctness, see State v. Wright, 662 So.2d 975 (Fla. 2d DCA 1995), we reverse the order and remand this case for further proceedings.
Reversed and remanded for further proceedings.
PATTERSON, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] The officer had driven by this same area earlier on three or four occasions and verbally asked individuals gathered there to leave. There is no indication, however, that the appellee was present on these occasions.
[2] Although not argued, we note that assuming the officer exceeded the scope of his lawful authority in ordering the appellee to leave the area, the appellee's subsequent, intervening conduct was sufficient to dissipate any taint occasioned by the officer's order. See Williams v. State, 640 So.2d 1206 (Fla.2d DCA 1994).