696 So.2d 880 (1997)
STATE of Florida, Appellant,
v.
Jeremiah JOHNSON, Appellee.
No. 95-1943.
District Court of Appeal of Florida, Fifth District.
June 6, 1997.
Rehearing Denied July 17, 1997.
*881 Robert A. Butterworth, Attorney General, Tallahassee, and Barbara Arlene Fink, and David H. Foxman, Assistant Attorney Generals, Daytona Beach, for Appellant.
James B. Gibson, Public Defender, and James R. Wulchak and S.C. Van Voorhees, Assistant Public Defenders, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
HARRIS, Judge.
We again grant rehearing and substitute the following opinion.
Jeremiah Johnson moved to suppress the illegal drugs found on himself and in his vehicle on the basis that the discovery of cannabis on a "former" passenger does not justify the warrantless search of a vehicle owned by another. The trial court suppressed the evidence and we reverse.
It is apparent that the court suppressed the evidence in this case not because the officer improperly commanded the codefendant to remove his hands from his pockets, thus revealing the cannabis (the argument now being made) but rather because the court believed that it should, under the circumstances of this case, grant Johnson's motion based on the argument that the search of the passenger compartment of the vehicle was unauthorized since the occupants were outside the vehicle at the time of the arrest.
We all agree that this was an incorrect basis for the ruling. In New York v. Belton, 453 U.S. 454, 459-460, 101 S.Ct. 2860, 2863-2864, 69 L.Ed.2d 768, 774-775 (1981), the United States Supreme Court addressed "the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants" and held "that when a policeman has made a lawful custodial arrest of the occupants of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." We do not believe that "the occupants" can avoid the consequence of Belton by merely stepping outside the automobile as the officers approach.
Even so, the dissent argues that under the "tipsy coachman rule," the trial court should be upheld because its ruling was right for another reason. This argument suggests that the officer's request that one of the occupants who had just vacated the vehicle remove his hands from his pockets while they engaged in a conversation agreed to by that occupant was so coercive that it converted what had been a consensual encounter into a seizure justifying the suppression of all the after-discovered drugs. We simply disagree.
The facts are not disputed. Jeremiah Johnson, appellant herein, was the driver and owner of a vehicle parked in a garage located on the top of the Alba Business Building. As officers on bicycles approached, the occupants *882 exited the vehicle. One of these occupants was Ryan. Officer Berry approached Ryan and asked if he could speak to him. Officer Berry testified, "he stated sure and at that time he walked toward me and placed his hands in his pocket and I asked him if he would mind while I was talking to him if he would take his hands out of his pocket." When asked why he made this request, Officer Berry responded, "because as I went on to explain I did not know him and for safety reasons Iif I don't know him and I didn't know what he had in his pockets I would feel more comfortable if he takes his hands out of his pockets."
In response to this request, Ryan said, "Sure, I'll empty the contents of my pockets." He then proceeded to empty his pockets revealing the cannabis. Ryan was placed under arrest and since the officer had just observed him sitting in the passenger seat of the automobile, he proceeded to search the passenger compartment of the vehicle. In the glove compartment, additional drugs were found. Because Johnson was the owner/driver of the vehicle, he was placed under arrest and a search of his person revealed even more drugs.
The dissent suggests that when the officer asked Ryan if he would mind removing his hands from his pockets, the consensual encounter was converted into a seizure. We disagree.
In arguing for reversal, the dissent relies on Popple v. State, 626 So.2d 185 (Fla.1993). We believe such reliance is misplaced. In Popple, an officer approached a vehicle legally parked in a desolate area and "asked" Popple to exit the vehicle. It is somewhat difficult from the opinion to determine exactly what the officer said to Popple. Although the court uses the term "asked" in one sentence, it also stated that, "[T]o insure his safety, [Officer] Wilmoth directed Popple to exit the vehicle." Id. at 186. The court also stated that "[t]he State seeks to justify the deputy's decision to order Popple out of the vehicle ..." Id. at 187 Finally, the court stated:
Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity. [Citation omitted.] This court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. [Citation omitted.] Whether characterized as a request or an order, we conclude that Deputy Wilmoth's direction for Popple to exit his vehicle constituted a show of authority which ... a reasonable person under the circumstances would believe that he should comply. [Emphasis added.] [Citation omitted.]
Id. at 187-188.
Because of the limited facts given in Popple, we cannot tell whether the officer "asked," "directed," "ordered," or "requested" Popple to exit the vehicle. Nor can we tell from the opinion, although we might be able to tell from the Popple record, the tone of voice used in making the request/order/direction. Whatever the deputy said, and however he said it, even if characterized as a request, clearly didn't pass muster. However, in our case, it is undisputed the officer merely said, "Would you mind removing your hands from your pockets while we talk?" It is difficult to imagine how such inquiry could intimidate Ryan into emptying his pockets. More importantly, however, while a request to exit a vehicle might cause a reasonable person to conclude that he is not free to leave (since he is abandoning his means of transportation), the same simply cannot be said of a request to remove one's hands from his pockets during a conversation in which he had agreed to participate. The fact that Ryan was not intimidated in this case is perhaps most evident because he did not claim that he was nor did the trial court find any intimidation. Here, there was no indication that there was anything to prevent Ryan from terminating the conversation or to prevent the occupants from getting back into the automobile and driving away.
*883 We believe the case that controls this search and seizure issue is Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In Bostick, the United States Supreme Court held that a police officer, even though he has no basis for suspecting an individual, may not only request that the individual talk to him but may also request such person to submit to a search so long as the officer does not convey a message that compliance with the request is required. There is nothing in this record, and the trial court made no such finding, that the request that Ryan remove his hands from his pockets while he and the officer talked conveyed a message that compliance was mandated.
Under Bostick, it would even have been appropriate for the officer to request that Ryan submit to a search. In this event, had Ryan said "Sure, I'll empty the contents of my pockets" (his actual response in this case), the search would have been legal under Bostick. But Officer Berry did not request a search in this case. His request was much less intrusive: "Would you mind removing your hands from your pockets while we talk?" This request, most reasonable under the circumstances, does not justify suppressing the drugs found as a result of Ryan's voluntary compliance with the request. In Bostick v. State, 593 So.2d 494 (Fla.1992), the Florida Supreme Court, on remand, upheld a request far more intrusive on its face than the request made herein.
REVERSED and REMANDED for further action consistent with this opinion.
GOSHORN, J., concurs.
THOMPSON, J., dissents, with opinion.
THOMPSON, Judge, dissenting.
This case turns upon whether a "request" instead of an "order" to remove Ryan's hands from his pockets, "to assure the officers' safety," constituted a seizure. Whether the officer's statement is characterized as a "request" instead of as an "order" is not determinative. In my opinion, the fact that Ryan was directed to take his hand from his pocket caused the consensual encounter to evolve into a seizure. Therefore, all the drugs and drug paraphernalia retrieved at the scene should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Woodson v. State, 579 So.2d 381 (Fla. 5th DCA 1991).
Two uniformed and armed officers on bicycle patrol approached Johnson's car at 3:30 a.m. Johnson's car, a Honda Civic, was legally parked in a parking garage in downtown Orlando. The officers testified that as they approached the vehicle they did not see any unusual movement or furtive gestures; they did not smell any burning marijuana, or see any contraband. The police saw Johnson and Ryan get out of the car along with Ryan's girlfriend. The officers testified that they did not observe any behavior that established a well-founded suspicion that either Ryan or Johnson had committed, was committing, or was about to commit a crime. Therefore, this was not a Terry stop. See § 901.151, Fla. Stat. (1993); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers also testified they had no arrest warrants. Therefore, the police had no basis to justify a seizure of Ryan or Johnson, and at most could engage in a consensual encounter. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Lightbourne v. State, 438 So.2d 380, 387 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).
I agree with the majority that under Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the police officer was allowed to ask Ryan to speak with them and to present identification, as long as Ryan felt that he could leave at any time and that he was not required to submit to the apparent authority of the officer. I also agree that the initial encounter was consensual, but I do not agree that it remained so. At the time the police officer directed Ryan to take his hands from his pockets, he was seized because he submitted to the authority of the officer.
The test to apply to determine if Ryan was seized is whether a reasonable person would have believed he was free to go. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (holding "[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed *884 that he was not free to leave.") This court has held that once an officer orders a person to remove his or her hand from a pocket, the consensual encounter becomes a seizure. Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993); accord, Gipson v. State, 667 So.2d 418, 420 (Fla. 5th DCA 1996). In Harrison, the appellant was stopped on the street by the police, who ordered him to remove his hands from his pocket. This court ruled that the consensual encounter evolved into a seizure when the officer issued the order. When he complied with the order, he was submitting to the show of authority. Id. at 585.
Other district courts have reached the same conclusion. See Doney v. State, 648 So.2d 799, 801 (Fla. 4th DCA 1994) (holding that compliance with officer's request that appellant spit out contents of his mouth was acquiescence to authority, rather than consent); Palmer v. State, 625 So.2d 1303 (Fla. 1st DCA 1993) (holding that abandonment of a razor blade was product of illegal stop and thus involuntary because seizure occurred when officer told defendant to take his hands out of his pockets); Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992) (holding that seizure occurred when officer told defendant to remove hands from pockets and to turn around so that officer could get good look at him), rev. denied, 623 So.2d 495 (Fla.1993); Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990) (holding that seizure occurred when officer directed defendant to exit vehicle and remove hand from pocket); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989) (holding that cocaine was not voluntarily abandoned where defendant, who was sitting on park bench at 4:00 a.m., dropped cocaine after complying with constitutionally unjustified police order to remove hands from pocket for officer's safety). Contra, Sander v. State, 595 So.2d 1099 (Fla. 2d DCA 1992) (not improper for officer to ask defendant to remove hands from his pockets). It is clear that an order to remove a hand from a pocket is a seizure. The question, then, is whether a request is a seizure. I think it is.
The Florida Supreme Court in Popple v. State, 626 So.2d 185, 188 (Fla.1993), wrote that "[w]hether characterized as a request or an order" the act of directing a person to exit his vehicle "constituted a show of authority which restrained [appellant's] freedom of movement because a reasonable person under the circumstances would believe that he should comply." Although the instant case does not involve the officer ordering a driver or passenger from the car, the reasoning still applies. Whether the officer's directive is characterized as a request or an order, the result is the same; Ryan submitted to the authority of the officer. Ryan was given a Hobson's choice: obey the officer and remove his hands, or disobey the officer and possibly suffer dire consequences. Since the officer testified that his request was predicated upon his concern for his safety, Ryan was left with no alternative. We can only speculate what might have occurred if Ryan had not complied. Ryan's response to the officer, "Sure, I'll empty the contents of my pockets," makes it obvious he did not feel that he could refuse. Perhaps he misunderstood the officer or was nervous. Regardless, he complied because of the officer's communication. I am mindful that officers need to be careful of citizens who may be armed, but an officer's concern for his safety is not a basis to violate a citizen's Fourth Amendment rights. Based upon the prior rulings of this court and Ryan's response, I would affirm the order suppressing the evidence because it was obtained as a result of a seizure made in violation of Ryan's Fourth Amendment rights.