695 So.2d 503 (1997)
Stanley Eugene TAYLOR, a/k/a Tony James, Appellant,
v.
STATE of Florida, Appellee.
No. 95-04855.
District Court of Appeal of Florida, Second District.
June 13, 1997.
*504 Steve Pincket, Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
PARKER, Judge.
Stanley Eugene Taylor appeals the trial court's order adjudicating him guilty of two counts of third-degree burglary. Taylor entered a plea of no contest, reserving his right to appeal the trial court's denial of his motion to suppress fingerprints taken from him after he was stopped by police officers. The state stipulated that this issue was dispositive. We reverse.
At approximately 10:30 p.m., Officer Santos responded to a burglary in progress in Winter Haven, Florida. Upon arriving at the scene, a neighbor (Holman) told Officer Santos that he observed an unknown black male attempting to break into two vehicles in the carport across the street. Holman could not positively identify the suspect, but stated that the suspect left on a bicycle traveling in an unknown direction. Officer Forgues obtained latent fingerprints lifted from the vehicles.
Brandon Rafool, who was not present when the crimes occurred, drove up to the crime scene and informed the officers that he had just passed a black male on a bicycle one quarter mile away heading eastbound, away from the crime scene. Officer Santos radioed Rafool's information to other units in the area to be on the lookout (BOLO) for a black male on a bicycle. Shortly thereafter, Officers Rivera and Bissett stopped Taylor. Officer Santos took Rafool to identify Taylor. Rafool stated that Taylor was the same person he had observed earlier. Officers Santos and Bissett took Taylor's fingerprints at the scene and released him.
Taylor argues that his fingerprints were obtained after an improper stop, because the BOLO upon which the officers relied was too vague to warrant the stop. The BOLO described the suspect as a "black male on a bicycle, heading eastbound on Avenue L, S.E." In Hunter v. State, 660 So.2d 244 (Fla. 1995), cert. denied, ___ U.S. ____, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996), the supreme court stated:
Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information.
Id. at 249; see also State v. Wise, 603 So.2d 61, 63 (Fla. 2d DCA 1992); Sumlin v. State, 433 So.2d 1303, 1304 (Fla. 2d DCA 1983). In *505 this case, all four factors fail the legitimacy test for Taylor's stop.
Looking to the first factor, time and distance from the offense, the BOLO was broadcast shortly after the police arrived at the scene. The record before this court does not indicate how much time elapsed between the commission of the crime and the officers' arrival at the scene. The perpetrator's rate of speed in fleeing from the scene is not documented. It is, therefore, impossible to determine whether Taylor's location, when stopped, coincided with the estimated location of the perpetrator.
Regarding the second factor, route of flight, the BOLO stated that the suspect was traveling eastbound on Avenue L, S.E. Taylor was stopped heading eastbound on Avenue K, S.E. However, the source of this "route of flight" information was provided by Rafool, who did not witness the crime. The only true witness was Holman, who did not know the perpetrator's direction of flight.
Regarding the third factor, specificity of the suspect's and vehicle's descriptions, the only eyewitness, Holman, could state only that the perpetrator was a black male who left riding a bicycle. The BOLO gave no other description that could have been used to distinguish Taylor from other black males riding bicycles.
Lastly, the fourth factor, the source of the BOLO information, is lacking because it appears that the officers were relying, in part, on Rafool's statement, although he did not witness the crime. In fact, the officers took Rafool, not the neighbor, to the location where Taylor had been stopped for identification.
"In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity." Popple v. State, 626 So.2d 185, 186 (Fla.1993). To justify the stop, the police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably justify the stop." State v. Webb, 398 So.2d 820, 822 (Fla.1981) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). There are no specific and articulable facts in this case that reasonably justified the stop of Taylor. A review of the facts, as they existed at the time the evidence was seized, indicates that Officers Rivera and Bissett knew only that: (1) Taylor was a black man; (2) Taylor was riding a bicycle; and (3) Taylor was traveling in a direction away from the crime scene. In light of these scant facts, this Terry stop was not appropriate.
Although Taylor was a "black man riding a bicycle," that description could have fit many men. See Strong v. State, 495 So.2d 191, 192 (Fla. 2d DCA 1986), review denied, 503 So.2d 328 (Fla.), cert. denied, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987); see also Williams v. State, 454 So.2d 737 (Fla. 2d DCA 1984); Ross v. State, 419 So.2d 1170 (Fla. 2d DCA 1982). "A vague description simply will not justify a law enforcement officer in stopping every individual or vehicle which might possibly meet that description." Sumlin, 433 So.2d at 1304.
This is not a case in which the facts indicate that Taylor was the only person in the vicinity fitting the description provided. If the record before this court contained such information, this court's analysis may have been different. See e.g., Cobb v. State, 642 So.2d 656, 659 (Fla. 1st DCA 1994) ("In finding a proper basis for denying the motions to suppress, we note especially the significance of the particularized rural setting in which these early-morning events occurred, and Officer Ellis' stated longstanding familiarity with the character of the different locations involved."); State v. Jones, 417 So.2d 788 (Fla. 5th DCA 1982). In this case, the demographics of the location in which the crime occurred were not discussed in the record furnished to this court and were never addressed by the trial court below.
Further, our opinion may have been different if Officers Rivera and Bissett had conducted a consensual encounter rather than a Terry stop. The consensual encounter does not require a reasonable or founded suspicion as no Fourth Amendment protection is implicated. See Popple, 626 So.2d at 187; see also State v. Starke, 574 So.2d 1214, 1215 (Fla. 2d DCA 1991). This record indicates *506 that the officers stopped Taylor and held him until Rafool identified him, and until the officers took his fingerprints. Therefore, the stop was more than a consensual encounter. Only people legitimately detained can be compelled to give their fingerprints. See Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); Harrison v. State, 524 So.2d 1139 (Fla. 2d DCA 1988).
Officers Rivera and Bissett did not have the requisite founded suspicion that Taylor had committed a crime when they stopped him. To the contrary, the facts prove that the officers had nothing more than a bare suspicion that Taylor was the perpetrator. And "[a] `mere' or `bare' suspicion will not suffice." Popple, 626 So.2d at 186; Sumlin, 433 So.2d at 1304.
Accordingly, we reverse the judgment adjudicating Taylor guilty of two counts of third-degree burglary and remand this case to the trial court with directions that Taylor's motion to suppress be granted.
THREADGILL, C.J., and BLUE, J., concur.