697 So.2d 181 (1997)
The STATE of Florida, Appellant,
v.
R.R., a juvenile, Appellee.
No. 96-1445.
District Court of Appeal of Florida, Third District.
July 16, 1997.
Robert A. Butterworth, Attorney General, and Joni Braunstein, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Amy D. Ronner, Special Assistant Public Defender, and Elton D. McIntosh and Frank C. Simone, Certified Legal Interns, for appellee.
Before NESBITT, JORGENSON and SHEVIN, JJ.
NESBITT, Judge.
Based on a tip, two police officers conducted surveillance of an abandoned Dade house. They watched the house for ten to fifteen minutes, but saw no drug traffic. They observed the juvenile R.R. sitting in front of the house, listening to a radio. The officers had been told that when music was playing, drugs were available for sale. The officers approached. Because the juvenile was looking down, adjusting his radio, he did not see the officers approach. When R.R. looked up, the two police officers were standing approximately three feet in front of him. They were wearing exposed badges and guns. Before either officer spoke, R.R. dropped two clear plastic bags containing narcotics. R.R. remained seated. The officers then retrieved the plastic bags, and charged R.R. with possession of a controlled substance. The public defender moved to suppress the plastic bags.
The only party testifying at the suppression hearing was one of the arresting officers. After hearing the officer's testimony and counsels' arguments, the trial judge directed the child's counsel to his chamber to retrieve State v. Hollinger. The trial judge gave her the citation of 596 So.2d 521 (Fla. 5th DCA 1992). After reviewing the retrieved case, the trial judge concluded:
[T]he Court finds that there's no seizure here. When the respondent drops the package in this case, there was no show of authority by way of the orders of the respondent nor was he placed under arrest based on the testimony I've heard today. So that's why I'm denying your motion. All right.
Thereafter, defendant pled no contest, specifically reserving the issue of the suppression of the evidence. The next morning defense counsel motioned for re-hearing. Counsel had discovered that the trial court had based *182 its decision on a case which was overturned by the supreme court in Hollinger v. State, 620 So.2d 1242 (Fla.1993). Considering the newly discovered decision, the trial court reiterated the facts and then stated:
So, the question becomes whether or not there was a show of authority at the time in which he [R.R.] dropped the drugs.
Relying on Hollinger, the trial court then granted the motion. Thus, the issue in this case is whether the trial court erred in concluding that the evidence at issue had been dropped as the result of an unlawful seizure.
In Voorhees v. State, No. 83,380, ___ So.2d ___ [1997 WL 332176] (Fla. June 19, 1997), the supreme court, addressing the issue of a trial court's decision not to suppress certain evidence, observed:
The United States Supreme Court has defined a consensual encounter as one in which a reasonable person would feel free to disregard the police and go about the person's business. Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); see also Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion) (finding that police officers do not violate the Fourth Amendment prohibition against unreasonable searches and seizures by approaching an individual on the street and asking if the person is willing to answer a few questions; if so, putting questions to the person and offering the person's voluntary answers to such questions in evidence in a criminal prosecution). A consensual encounter does not require the police to have a reasonable suspicion of any improper conduct before initiating conversation. Popple v. State, 626 So.2d 185 (Fla.1993). A court, when determining whether a particular encounter is consensual, must look to all the circumstances surrounding the encounter when deciding if the police conduct would have communicated to a reasonable person that the person was free to leave or to terminate the encounter. Bostick, 501 U.S. at 439, 111 S.Ct. at 2389.
Traditionally, there are certain factors the courts have considered in determining whether a seizure has occurred: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); United States v. Moreno, 897 F.2d 26, 30 (2d Cir.), cert. denied, 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990).
In reviewing search and seizure decisions, Florida courts and federal courts alike apply different standards of review, depending on the nature of the questions presented. Aspects or components of the trial court's decision resolving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the trial judge's superior vantage point for resolving factual disputes. See Wilson v. State, 673 So.2d 505 (Fla. 1st DCA), review denied, 682 So.2d 1101 (Fla. 1996); State v. Setzler, 667 So.2d 343, 344 (Fla. 1st DCA 1995).
The Supreme Court has characterized the Fourth Amendment limits of search-andseizure power as intended "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals," United States v. Martinez-Fuerte, 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976), but "not to eliminate all contact between the police and the citizenry...." Mendenhall, 446 U.S. at 553-54, 100 S.Ct. at 1877; State v. Baldwin, 686 So.2d 682, 684 (Fla. 1st DCA 1996). "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." Baldwin, 686 So.2d at 684, (citing State v. Barnett, 572 So.2d 1033 (Fla. 2d DCA) (after determining that the person they sought was not in the car they had stopped, officers still were justified in asking the driver for identification, and their requests for a driver's license and vehicular papers merely continued the consensual encounter, not invoking the Fourth Amendment), review denied, 581 So.2d 163 (Fla.1991)).
Popple v. State, 626 So.2d 185 (Fla.1993), as well as Lang v. State, 671 So.2d 292, 293 *183 (Fla. 5th DCA 1996), outlines a three "level" analysis. At the police-citizen encounter level, a citizen may voluntarily comply with an officer's request and respond to questioning, or refuse to do so. At that point, the citizen is free to leave. This is followed by an investigatory stop, as set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), followed by the third level of encounter, an arrest. See Williams v. State, 694 So.2d 878 (Fla. 2d DCA 1997)(concluding initial encounter between police and defendant and preliminary questioning was consensual encounter until officer asked defendant to pull his waistband forward, at which point consensual encounter became investigatory stop.)
Analyzing the facts in Lang, 671 So.2d at 294, the court observed:
... this case turns on whether Lang had submitted to the deputy's authority at the time he dropped the pill bottle.... In this case Lang had not been physically subdued, but he had submitted to the deputy's authority by beginning to comply with the deputy's instruction to get into the patrol car. Had the deputy here merely asked Lang to approach his car in order to speak with him, and Lang had thrown down the contraband, or had Lang refused to comply with the deputy's directive, Lang would have voluntarily abandoned the contraband, and it could have been used as evidence against him. (Emphasis added.)
In State v. Crumpton, 676 So.2d 987 (Fla. 2d DCA 1996) the second district concluded that an order to disperse, given by a police officer to the defendant and others, was not the functional equivalent of a seizure of the defendant's person. Therefore, the subsequent interaction between the defendant and the police officer in which the officer asked what defendant had in his pocket and defendant responded that he had rock cocaine, was a consensual encounter rather than an unlawful detention.
The second district reversed the trial court's decision to grant Crumpton's motion to suppress, concluding:
[t]here is no competent, substantial evidence on the record that the officer used language that might indicate the appellee could not walk away or that the officer's actions or demeanor were intimidating. 574 So.2d at 1215. Accordingly, because the officer's words and actions would not have conveyed to a reasonable person that he or she was not free to leave, the initial contact between the officer and the appellee was a consensual encounter.
Crumpton, 676 So.2d at 990, (citing State v. Starke, 574 So.2d 1214(Fla. 2d DCA 1991)).
In State v. Johnson, 696 So.2d 880 (Fla. 5th DCA 1997), the fifth district, superseding two previously issued opinions in the same case, elaborated on why it was rejecting the position that a police request that a vehicle's occupant remove his hands from his pockets while they engaged in a conversation, agreed to by that occupant, was so coercive that it converted what had been a consensual encounter into a seizure justifying the suppression of all after-discovered drugs. The court concluded:
We believe the case that controls this search and seizure issue is Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). In Bostick, the United States Supreme Court held that a police officer, even though he has no basis for suspecting an individual, may not only request that the individual talk to him but may also request such person to submit to a search so long as the officer does not convey a message that compliance with the request is required.
Johnson, 22 Fla.L.Weekly at D1393.
Going back to Hollinger, several members of the Orange County Sheriff's Department were conducting a drug sweep. They pulled into a parking lot, exited their vehicle, announced "Orange County Sheriff's Office," and approached a group of people. The officers were clad in black masks and SWAT-team-type regalia. One of the officers noticed Hollinger put his hand behind his back and drop a tissue. The officer walked over and picked up the tissue, which proved to contain six rocks of cocaine. Faced with the officers' announcement as well as their foreboding attire, the supreme court concluded that under the circumstances, a reasonable *184 person in Hollinger's circumstances would not have known he was free to leave, and thus an unlawful seizure had occurred.
Looking at the case under review, the only witness at the suppression hearing was one of the arresting officers. R.R. was 16 years of age at the time of the incident. The tone of voice that the officers used cannot be deemed a factor, because R.R. dropped the bags containing drugs before the officers said a word. The two officers were several feet from R.R. when the juvenile looked up. The testifying officer stated only that R.R. sat "in front" of an abandoned home, and that according to the officers' informants, drug purchasers would go up to "the front door where defendant was seated."[1]
The trial court here originally denied the motion to suppress. Only after being shown the supreme court's opinion in Hollinger, did the trial judge change his decision. It appears that the trial judge based his ultimate ruling on the erroneous impression that merely walking up to the defendant was a show of authority, and precluded the use of the evidence at issue. This is clearly not the law. We conclude that what transpired was really no different than any consensual encounter; in fact, it could be viewed as a pre-consensual encounter, in that the police did not even have time to speak before R.R. voluntarily dropped the bags of drugs.
By way of recapitulation, the juvenile was sitting in front of an abandoned house in a residential area, some two blocks away from his own home. A radio was playing as the officers observed him pursuant to their tip. Dressed as described, the officers stopped some three feet from R.R. The spot where the juvenile sat was open to public view and not enclosed in any way. Thus, the confrontation was little different than had a juvenile, walking down a sidewalk, dropped contraband when approached by two officers.
Hollinger is easily distinguished. There, several members of the Orange County Sheriff's Department pulled into a parking lot, exited their vehicle, announced "Orange County Sheriff's Office." Clad in black masks and SWAT-team-type regalia, they approached a group of people. At that point, Hollinger put his hand behind his back and drop the tissue containing cocaine. Hollinger is a dramatic illustration of the kinetic energy of a police force fully ready to assume control of any situation. Quite obviously, Hollinger felt he had little recourse but to defer to the officers' command and felt he was not free to leave in deference to this superior show of authority. By comparison, the circumstances in this case are devoid of any coercionexcept mere presence.
For these reasons, the order granting the motion to suppress is reversed and the case remanded for further consistent proceedings.
NOTES
[1] See Koehler v. State, 444 So.2d 1032 (Fla. 1st DCA 1984) (concluding officer's warrantless arrest of defendant at his home, on his unenclosed front porch and exposed to public view, did not unconstitutionally invade defendant's privacy or intrude into his home); State v. Detlefson, 335 So.2d 371 (Fla. 1st DCA 1976)(finding defendant did not have reasonable expectation of privacy in front porch of his home where delivery men and others were free to observe plants thereon); State v. Belcher, 317 So.2d 842 (Fla. 2d DCA 1975)(concluding where officers who were proceeding to scene of burglary drove past residence and observed three men sitting on a couch on the porch and one officer observed the men handling jewelry, in walking to the front porch and placing defendants under arrest and seizing the jewelry, officers did not commit an unreasonable search and seizure on theory that the men were trespassers); see generally state v. Hamilton, 660 So.2d 1038 (Fla.1995)(holding for area surrounding residence to be considered part of "curtilage," as referred to in burglary statute, area must be enclosed in some manner).