PLEUS, J.,
dissenting.
I dissent. Given the totality of the circumstances, there was no violation of the Fourth Amendment. The deputy’s request of Woods to remove the contents of his pockets was justified. His response was voluntary. There was no illegal detention which tainted the consent.
Trial judges should be accorded great deference in evaluating the testimony given at a suppression hearing. The majority has ignored deference and reweighed the evidence. The trial court correctly analyzed the law and properly applied the law to the facts as demonstrated by the following excerpt from the bench at the hearing:
[Tjhere was a valid stop based on the headlights being out at night. So that stop’s okay. I don’t think that’s even challenged. A warning was issued. Not a lot of delay in filling out the paperwork, so we don’t have a problem with that.
At that point, the defendant was free to go. Could have left. Police officer asked if he wanted to — was willing to have his car searched or you mind if he searched his car and he said no problem. His car was searched.
He’s standing outside the car fiddling and fumbling with his pockets and so the officer in some form — and it really doesn’t matter which form because even if you use the form that defense counsel wants to use, that could be construed a command depending on the inflection you put on it. But anyway, I am determining that that was at that point a citizen encounter, the stop had ended, there was not, you know, any kind of a Terry stop at that point. It was a citizen encounter.
That he did have reason to believe, even though he doesn’t need it at that point, he has reason to believe that something was not right because of the nervousness and the fumbling and the continued placing of the hands in the pockets. And when he reached in his pockets, through his own volition and consent and pulled out the material, then obviously there’s probable cause to arrest, then there’s probable cause to do a complete search. And that’s when the crack was allegedly found.
The trial court’s analysis meets not only constitutional muster but simple common sense as well.
The conduct of Woods was more than enough to create a reasonable suspicion which justified the request of the deputies to empty his pockets. The fact that Woods was nervous; that he kept putting his hands in his pockets; that he was repeatedly asked not to put his hands in his pockets; that he repeatedly ignored the request and put his hands back in his pockets created a justifiable concern that Woods was either hiding something or was carrying a knife or a gun. There was ample justification for the request to empty his pockets. As it turned out, the deputies’ suspicions were well-founded.
Moreover, Woods was told for his safety and the safety of the deputies to keep his hands out of his pockets. Given the facts of this case, one can conclude that the deputies had a perfect right to be concerned for their personal safety and the safety of Woods.
I fail to see any facts which would justify a finding of an unlawful detention. Woods voluntarily consented to a search of his car. There is nothing in the record to suggest that this consent was anything but *565 voluntary. In fact, Woods even offered to help. It is beyond comprehension to conclude that Woods was the subject of an “illegal detention” because Deputy Gore, motivated by safety concerns arising in connection with this roadside encounter, simply asked him to stay back while Deputy Spooner searched his car. See State v. Johnson, 696 So.2d 880 (Fla. 5th DCA 1997) (officer’s request that passenger who had voluntarily vacated a vehicle remove his hands from his pockets while they spoke was not so coercive as to convert consensual encounter into seizure). This unwarranted stretch of the Fourth Amendr ment minimizes the safety concerns of law enforcement officers and sends a dangerous message to them. It suggests that police be taught: If an individual who is the subject of a consensual encounter gives consent to search his car, the individual must, absent voluntary movement, remain precisely where he is at the time the consent is given. If that happens to be close behind the officer, overlooking the officer’s shoulder during the search, then so be it. The officer is forced to decide between his or her safety and jeopardizing the validity of the search. Such a procedure is contrary to officer safety and common sense.
The State met its burden of proving that the necessary consent to empty his pockets was freely and voluntarily .given. See Walls v. State, 814 So.2d 1235 (Fla. 5th DCA 2002) (affirming denial of suppression motion where record showed that encounter was consensual and that during encounter, defendant was asked to and freely consented to search of his person). There was no unlawful detention. I would affirm the trial court.